■ In the Matter of 2 WEST 125TH LIQUORS, INC., Petitioner, v NEW YORK STATE LIQUOR AUTHORITY, Respondent. [630 NYS2d 299] —Determination of respondent State Liquor Authority dated December 22, 1993, challenged by petition pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [William McCooe, J.], entered March 31, 1994), which revoked petitioner's off-premises liquor license and imposed a $1,000 bond forfeiture, annulled, on the law, to the extent of vacating the penalty and remanding the matter to respondent for reconsideration and imposition of an appropriate penalty, and otherwise confirmed, without costs.

Substantial evidence supports respondent's determination that petitioner, a retail licensee, violated Alcoholic Beverage Control Law § 100 (1) and § 105 (12) by selling alcoholic beverages to other retail licensees for the purpose of resale. Especially compelling were the receipts that three of petitioner's purchasers provided to respondent's investigator (*cf., Matter of Lane v State of N. Y. Liq. Auth.*, 127 AD2d 922).

However, the penalty imposed for the violation was excessive and shocking to one's conscience under the circumstances (*see, Matter of Mei Chi Liq. Corp. v New York State Liq. Auth.*,

195 AD2d 270, *lv denied* 82 NY2d 660), especially given the technical nature of the violation, and the fact that the petitioner has never been charged with any other violation by the respondent, or any other agency. Accordingly, we remand to respondent solely for reconsideration of the penalty imposed. Concur—Rosenberger, J. P., Ellerin and Ross, JJ.

Rubin and Tom, JJ., dissent in a memorandum by Tom, J., as follows: I respectfully dissent and would vote to confirm the determination of the State Liquor Authority and dismiss the petition. I take issue, and strongly disagree, with the majority's characterization of petitioner's conduct as of a "technical nature" in view of the evidence presented at the hearing.

Petitioner 2 West 125th Liquors, Inc. ("2 West") was issued an off-premises liquor license by the New York State Liquor Authority (the "Liquor Authority") on or about June 9, 1987 for the premises designated as 2 West 125th Street, New York, New York, which license had been renewed periodically. Petitioner operates a liquor store, Kingdom Liquor Market ("Kingdom"), on the premises.

On October 6, 1992, the Liquor Authority commenced a proceeding to revoke, cancel or suspend petitioner's license based upon the following charges:

"That on July 1, 2, 8, 9, 16 and 17, 1992, in violation of subdivision 1 of Section 100 of the Alcoholic Beverage Control Law, the licensee sold alcoholic beverages within the state without obtaining the appropriate license.

"That on July 1, 2, 8, 9, 16 and 17, 1992, the licensee sold alcoholic beverages for resale in violation of subdivision 12 of Section 105 of the Alcoholic Beverage Control Law, all cause for revocation, cancellation or suspension of the license."

On November 8, 1993, a hearing was held before Administrative Law Judge Robert Karr ("Judge Karr"), during which the only witness to testify was Liquor Authority Investigator Ronald Spooner as petitioner declined to call any witnesses. Indeed, the detailed testimony educed from Spooner, buttressed by documentary evidence, would have been exceedingly difficult, if not impossible, to overcome. The following testimony was elicited during the hearing and is based, essentially, on surveillance conducted by Investigator Spooner.

On the first occasion, July 1, 1992, Spooner observed two male blacks loading numerous cases of alcoholic beverages (identified by Spooner by brand name at the hearing) from Kingdom into a blue van bearing New York license plate WCN218. Spooner then "tailed" the van and observed it stop

at three different retail liquor stores where, in each instance, the two men unloaded a number of the cases. Sixteen cases were delivered to the first store, and seven to each of the second and third.

On the second occasion, July 2, 1992, Spooner observed the same van, being driven by the same individual, again being loaded with cases of alcoholic beverages. Spooner followed the van and saw it make five deliveries to retail liquor stores of three, four, five, twenty-four and three cases, respectively.

On July 8, 1992, Spooner observed numerous cases of alcoholic beverages being loaded from Kingdom into a white van, bearing New York license plate ZFG590, which was driven by Winston Vansertima, who had picked up the vehicle from "Better Buggy Rentals". The rental agreement, admitted as an exhibit during the course of the hearing, states that the van was rented by Kingdom Liquor. On the date in question, Spooner observed the van make deliveries of three and four cases of alcoholic beverages, respectively, to two retail liquor stores.

On July 9, 1992, Spooner observed numerous cases of alcoholic beverages being loaded from Kingdom into a brown Plymouth bearing New York license plate BXT458, which Spooner followed to a retail liquor store located at 2415 7th Avenue. At that location, Spooner observed six of the cases being unloaded from the Plymouth and delivered into the premises, after which Spooner went inside and disclosed his identity to the owner, Nat Edwards. Edwards allegedly informed Spooner at that time that he had purchased the liquor from "[a] liquor store located on 125th Street," and he provided an invoice for the six cases. Edwards further provided Spooner with four other receipts, purportedly from the same liquor store on 125th Street, as well as a written statement admitting that he, as owner of Nat Edwards Liquors, Inc., made previous purchases from that store when out of stock on an item.

On July 16, 1992, Spooner observed twenty-eight cases of assorted alcoholic beverages being loaded from Kingdom into a beige van, bearing New York license plate K8KD705, and then observed the cases being unloaded into a liquor store located at 158 East 116th Street. Spooner subsequently entered the premises and disclosed his identity to the owner, a Mr. Mercado, who stated he was a new licensee and that he had purchased the liquor from 2 West 125th Liquors. Mercado also produced an invoice for the twenty-eight cases in the amount of $630 dated July 16, 1992.

On July 17, 1992, the last day of surveillance, Spooner observed four or five cases of alcoholic beverages being loaded from Kingdom into a Chevrolet bearing New Jersey license plate HEE18V, and followed that vehicle to a liquor store located at 640 Melrose Avenue, Bronx, New York. After observing the liquor being unloaded, Spooner entered the premises and identified himself to the owner, Mingo Espinosa, who stated he had purchased the liquor from "2 West 125th Street Liquors".

Spooner thereafter obtained a sworn statement from Espinosa in which he admitted that he had given his brother Tony $360 with instructions to drive to a liquor store on the corner of 125th Street and 5th Avenue and to purchase numerous cases, which he did. Spooner obtained a receipt from Espinosa dated July 17, 1992, as well as an affidavit from Tony Espinosa attesting to his purchase of the cases from petitioner's liquor store on 125th Street and 5th Avenue.

Mingo Espinosa also averred in the affidavit that he has ordered alcoholic beverages over the phone from the same liquor store three times a week for the past five months. The procedure being that he would call a certain number, place an order from "Mingo", and later the same day the liquor would be delivered in a blue van in exchange for a cash payment.

Judge Karr, based upon the "very detailed accounts of numerous purchases of a vast number of cases of alcohol in violation of Sections 100 (1) and 105 (12) of the ABC Law", found that "the licensee knew or should have known that the large quantities of liquor being sold at the subject premises were being sold illegally" and sustained both charges.

By letter dated December 8, 1993, petitioner's counsel submitted a statement to the Chairman and Commissioners of the Liquor Authority arguing, somewhat remarkably in light of the uncontroverted evidence presented, that the evidence proffered at the hearing was insufficient as a matter of law to meet the substantial evidence standard required to support a determination by the Liquor Authority.

On December 22, 1993, the members of the Liquor Authority adopted the findings of Judge Karr, sustained the charges, and approved the penalty of revocation and $1,000 bond claim. One of the four members voted for the lesser penalty of 90 days suspension plus $1,000 bond claim. The Liquor Authority issued a formal Revocation Order on December 28, 1993 and on that same day, petitioner commenced the instant CPLR article 78 proceeding in the New York County Supreme Court. By order entered March 31, 1994, the proceeding was transferred to

this Court, pursuant to CPLR 7804 (g), for a determination based upon substantial evidence.

I am in agreement with the majority that substantial evidence supports the Liquor Authority's determination that petitioner violated Alcoholic Beverage Control Law § 100 (1) and § 105 (12). I disagree, however, that the penalty of revocation was somehow excessive or that petitioner's conduct could be deemed technical in nature, in light of the numerous, high-volume, systematic violations which occurred.

In a period of approximately one week, the Authority's investigator had observed over one hundred cases of alcoholic beverages loaded at petitioner's premises, and then delivered and sold to numerous retail liquor stores throughout the City. A number of these retailers have stated and confirmed by receipts that they have made purchases from petitioner in the past. One retailer averred that he makes purchases from petitioner's store when he is out of stock. The uncontroverted evidence in this case shows that petitioner was operating a substantial unlicensed wholesale operation on an ongoing basis. Petitioner's persistent and flagrant violations of Alcoholic Beverage Control Laws § 100 (1) and § 105 (12) have deprived the State of licensing costs and tax revenue as well as legitimate wholesalers of the benefit of their licenses. Without the intervention of the Authority, petitioner's illegal operation would have continued unabated.

In view of the foregoing, I conclude that the penalty of revocation and $1,000 bond claim is not so shockingly disproportionate to the offense, or an abuse of the Liquor Authority's discretion, as to warrant the disturbance of the agency's ruling (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 233; *Matter of Popper's Delicacies v State Liq. Auth.*, 98 AD2d 601, *lv denied* 61 NY2d 606; *Matter of De Leon v New York State Liq. Auth.*, 181 AD2d 546; *see also, Matter of Dumbarton Oaks Rest. & Bar v New York State Liq. Auth.*, 58 NY2d 89) and I find the majority's reliance on *Matter of Mei Chi Liq. Corp. v New York State Liq. Auth.* (195 AD2d 270, *lv denied* 82 NY2d 660) to be misplaced as the petitioner therein made *one purchase* from a New Jersey wholesaler not licensed in this State. It is not applicable to the facts and circumstances herein where the petitioner was operating an illegal business in flagrant, repeated disregard of the Alcoholic Beverage Control Law.