OPINION OF THE COURT
Simons, J.
This is a CPLR article 78 proceeding instituted by several premium finance agencies and the trade association representing them. They seek to annul a determination by respondent Salvatore Curíale, Superintendent of Insurance of the State of New York, approving and adopting an amendment for financing assigned risk insurance policies proposed by respondent New York Automobile Insurance Plan (AIP). The Superintendent adopted the amendment without publishing any notice of the proposed rule, affording any opportunity for public comment, issuing either a regulatory impact statement or regulatory flexibility analysis, or filing the proposed amendment with the Secretary of State. Because of those omissions, petitioner contends the Plan failed to satisfy the requirements of the State Administrative Procedure Act, Executive Law § 102 and the filing requirements of article IV, § 8 of the New York Constitution. Supreme Court granted the petition and nullified the Plan. The Appellate Division affirmed and granted respondents leave to appeal. We conclude that the cited provisions do not apply to AIP or the amendment and therefore reverse.
In New York, all automobile owners are required to purchase and maintain automobile liability insurance (Vehicle and Traffic Law § 312). Some owners are unable to obtain coverage, however, because insurers believe they pose unreasonable risks. In order to provide insurance for all motorists owning and operating automobiles in New York, the Legislature enacted article 53 of the Insurance Law authorizing the Superintendent of Insurance to approve a "reasonable plan” requir *341 ing private insurance companies to provide automobile insurance to owners who are unable to purchase insurance in the open market (see, former Insurance Law § 63 [now § 5301]). The first assigned risk Automobile Insurance Plan was created and adopted pursuant to this authority in 1947.
In addition to the problems that these automobile owners have in obtaining insurance on the open market, they are often unable to pay the required premiums for assigned risk insurance. To enable and assist such persons to participate in the AIP, the State Legislature enacted article XII-B of the Banking Law in 1960, which authorizes the Banking Department to license companies (known as "premium finance agencies”) to finance the payment of insurance premiums, to regulate the content of finance agreements, and to set financing limitations (Banking Law §§ 554-578). Petitioner Insurance Premium Finance Association is a trade association representing premium finance agencies licensed and operating pursuant to those statutes and the remaining petitioners are premium finance agencies.
Prior to October 1992 persons applying for insurance coverage under the AIP had two payment options, i.e., the Installment Premium Payment Option (the Advance Option) and the Installment Option. The latter allowed persons subject to an annual premium of over $100 to pay for their insurance in three installments: 40% of the total estimated annual premium (plus a service charge of $3) upon application, an additional 30% (and $3) within three months of the effective date of the policy and the balance (plus another $3) within six months of the effective date of the policy. Persons not electing this Installment Option, or not eligible for it, could elect the Advance Option which required that they pay at least 30% of the total annual premium upon application and the balance within 30 days after receipt of the policy or notice of premium due.
In June 1992, the AIP proposed the amendment which petitioners challenge in this litigation (the "Six Payment Plan”). The Superintendent approved it in October of that year. The Plan was adopted by AIP after several months of study by a Task Force investigating the subject and after AlP’s Governing Committee had extensively reviewed it. Neither the Superintendent nor the Insurance Department participated in formulating the Plan.
The Six Payment Plan modified the previous structure in four ways. First, the Installment Option for those persons seek *342 ing to insure private passenger risks was altered to provide for six payments, rather than three. Second, payment was made by a deposit of 25% on applying for insurance — instead of 40% required under the Installment Option or the 30% required under the Advance Option — and five 15% installments due at designated monthly intervals after the effective date of the policy. Third, the service charge of $3, payable with the deposit and each installment, was increased to $4. Finally, the Six Payment Plan increased the minimum total annual premium required to be eligible for any of the installment options under the AIP from $100 to $300. The amendment thus provided insureds with an additional, more affordable and interest-free method of paying premiums.
Admittedly, respondents did not follow the procedural requirements of the State Administrative Procedure Act before adopting the Six Payment Plan. They contend that they were not obliged to do so because AIP is not subject to the statute and its Plan is not a "rule” as defined by the State Administrative Procedure Act, Executive Law § 102 or the State Constitution.
The State Administrative Procedure Act applies only to the rule-making activities of State agencies. Section 102 defines an "agency” as:
"any department, board, bureau, commission, division, office, council, committee or officer of the state, or a public benefit corporation or public authority at least one of whose members is appointed by the governor” (subd [1] [emphasis added]).
Both parties agree that the AIP is not an "agency” within that definition because the Governor does not appoint any of its members. Manifestly, however, the Insurance Department is a State agency and petitioners contend that since the Six Payment Plan could not become effective without approval of the Superintendent,* the amendments constitute agency action and are subject to the State Administrative Procedure Act. Supreme Court agreed. It also concluded that the Six Payment Plan is a rule of a State agency because it is a "statement of general applicability which prescribes requirements for that segment of the general public over which the Insur *343 anee Department exercises authority” (see, State Administrative Procedure Act § 102 [2]). Accordingly, it held that respondents’ failure to follow the procedural requirements of the State Administrative Procedure Act invalidated the rule.
Whether AIP should be deemed an agency of the State under these circumstances depends on whether the degree of control and supervision exercised by the Department of Insurance over AIP’s activities is so substantial that the act of AIP may be considered the act of the State rather than that of an independent entity (see, Incorporated Vil. of Great Neck Plaza v Nassau County Rent Guidelines Bd., 69 AD2d 528, 533-534). The nature and scope of AIP’s activities are regulated by statute, as are those of many entities, but unless it can be said that the State exercises "extensive, detailed and virtually day-to-day supervision” over AIP, it cannot be considered an instrumentality of the State or be subjected to the requirements of the statute (see, Forsham v Harris, 445 US 169, 180; Unt v Aerospace Corp., 765 F2d 1440, 1448 [9th Cir 1985] [construing the Federal Administrative Procedure Act]).
AIP was created by private insurers to provide liability insurance for drivers unable to otherwise obtain it and to distribute the risk of insuring those drivers among the motor vehicle insurers doing business in New York State (see, former Insurance Law § 63 [now § 5301]; see generally, 1 Russ and Segalla, Couch on Insurance 3rd § 1:27). It is administered by a 15-member Governing Committee all of whom, except two appointed by the Superintendent to represent the public interest, are elected by the member insurance companies. It is funded entirely by private assessments against the insurer members and staffed by private employees paid from the funds so collected. Thus, the AIP is self-governing, as are the members who comprise it.
The Legislature authorized insurers to organize AIP so that "a detailed and comprehensive set of regulations governing the rights and liabilities of the parties entering into assigned risk insurance contracts” could be established (Aetna Cas. & Sur. Co. v O’Connor, 8 NY2d 359, 362; Matter of Bowley Assocs. v State of New York Ins. Dept., 98 AD2d 521, affd 63 NY2d 982). The AIP Committee sets service standards to be observed by insurers participating in the AIP including but not limited to the timely issuance of policies, certificates and endorsements, financial security forms, and the collection of required deposits (Insurance Law § 5302 [b]). The AIP also establishes various rules and regulations governing insurance coverage, eligibility, *344 rates, payment of premiums, submission and adjustment of claims and the resolution of claims disputes.
Respondents contend that AIP may not be deemed a State agency nor its Plan the rule of a State agency because the Superintendent did not direct AIP to amend the payment plan, he was not involved in its revision and his approval consisted entirely of a determination that the Plan was consistent with existing laws and regulations. They assert that the Superintendent’s function was limited to examining the reasons for the change, the procedure for implementing it and whether the proposed amendment was in accordance with the Insurance Law. Moreover, respondents note that the amendments submitted by AIP involved matters which the Superintendent routinely approves when submitted by insurers (see, e.g., Insurance Law § 2307 [forms]; § 2305 [rates]), and they contend that the mere approval of the amendments under these circumstances does not constitute the adoption of an agency rule within the intendment of the State Administrative Procedure Act any more than the approval of a private insurer’s rate schedule would constitute an agency rule.
We conclude that AIP is not a State agency within the definition of the statute and the Insurance Department’s status as an agency may not be imputed to AIP merely because the Superintendent approved the Six Payment Plan. The Superintendent’s actions did not constitute agency rule making because the amendment related to the operations of a private entity rather than the Insurance Department. Moreover, the Superintendent did not exercise such extensive supervision and control over AIP that it may be considered an instrumentality of the State. Inasmuch as the AIP is not a State agency, the Six Payment Plan is not an agency rule and neither the requirements of the State Administrative Procedure Act, Executive Law § 102 nor the filing requirements of article IV, § 8 of the New York Constitution apply to it.
This view of AIP’s status is confirmed by its history. AIP was established in 1947, 29 years before the State Administrative Procedure Act was enacted. When the Legislature enacted the State Administrative Procedure Act, it did not define the entities subject to the new statute to include AIP. Indeed, AIP is one of several industry entities the Legislature has similarly authorized to address specialized insurance needs and it has never required any of them to comply with the provisions of the State Administrative Procedure Act (see, e.g., Motor Vehicle Accident Indemnification Corporation [Insurance Law art *345 52]; New York Property Insurance Underwriting Association [Insurance Law art 54]; Medical Malpractice Insurance Association [Insurance Law art 55]). And this is so even though AIP has had active consultation with government officials during its existence and the Superintendent has adopted AIP amendments in the past without complying with the State Administrative Procedure Act. Though cognizant of AIP’s activities and the Superintendent’s actions, the Legislature has defined the agencies to which the State Administrative Procedure Act applies in a way which clearly excludes AIP and similar entities.
Finally, petitioners contend that even if AIP was not subject to the State Administrative Procedure Act, respondents acted arbitrarily in failing to hold a public hearing on the proposal before adopting it. Although the Superintendent was not required to do so, he did provide petitioner Insurance Premium Finance Association of New York State with an opportunity to express its opposition to the Plan. Petitioners contend, however, that the opportunity to be heard did not meet statutory standards.
More to the point, they note that AIP proposed a similar plan in 1977 and held a hearing at that time to allow all interested parties to comment on the proposal. The then Superintendent of Insurance rejected the proposal, relying heavily on reasoning voiced in opposition at the public hearing. Pointing out that respondent did not hold a hearing in 1992, petitioners maintain that respondents are duty bound to explain the inconsistent procedures and why facts essentially the same as those produced in 1977 were not deemed an obstacle to approval now.
Petitioner relies on Matter of Field Delivery Serv. (Roberts) (66 NY2d 516) and similar decisions. The Field decision, however, addressed actions of an administrative agency acting in a quasi-judicial capacity, not those which are quasi-legislative. Our decision imposes a stare decisis constraint on administrative agencies requiring them to explain inconsistent decisions. There is no similar rule applicable to quasi-legislative actions of an administrative agency adopting new rules (cf., Matter of Richardson v Commissioner of N. Y. City Dept. of Social Servs., 88 NY2d 35).
Accordingly, the order of the Appellate Division should be reversed, with costs, and the petition dismissed. The certified question is not answered upon the ground that the Appellate *346 Division order is final and the certified question is thus unnecessary.
Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
Order reversed, etc.

 Insurance Law § 5301 (b) provides: "Amendments to the plan may be made by the committee designated to administer the plan, subject to the approval of the superintendent, or shall be made at the direction of the superintendent” (emphasis added).