■ GRASSO PUBLIC CARTING, INC., et al., Respondents, v TRADE WASTE COMMISSION OF THE CITY OF NEW YORK, Appellant. ROBERT M. MORGENTHAU, as District Attorney of New York County, Plaintiff, v FRANK ALLOCCA et al., Defendants. CREST CARTING CO., INC., et al., Third-Party Plaintiffs-Appellants, v TRADE WASTE COMMISSION OF THE CITY OF NEW YORK, Third-Party Defendant-Respondent. [673 NYS2d 391] —Order, Supreme Court, New York County (Robert Lippmann, J.), entered October 3, 1997, which, to the extent appealed from, granted Grasso Public Carting's motion for a preliminary injunction continuing in force an August 12, 1997 order temporarily restraining the Trade Waste Commission (the Commission) from enforcing or implementing its denial of Grasso's license application and mandating that the Commission determine Grasso's later-filed application to sell its waste carting business, unanimously reversed, on the law, without costs, the motion denied and the petition dismissed.

Order and judgment (one paper), Supreme Court, New York County (Lewis Friedman, J.), entered October 8, 1997, which, to the extent appealed from, denied the motion of third-party plaintiffs-appellants for a preliminary injunction and granted defendant-respondent Commission's cross-motion to convert the third-party action to a CPLR article 78 proceeding and to deny the petition, unanimously affirmed, without costs.

These appeals share a common factual background, arising from the City of New York's recent overhaul of its regulatory scheme governing commercial waste removal. This was an area dominated by organized crime dating back to 1956, when the City enacted the requirement that businesses contract privately for waste removal. In June 1995, after a five-year investigation, the New York County District Attorney (the D.A.) brought criminal charges against 17 individuals, 23 carting companies and the 4 principal carting trade associations in the City for enforcing an anti-competitive scheme through acts of violence directed by two organized crime families. Simultaneously, the D.A. commenced civil forfeiture proceedings against the indicted carters seeking forfeiture of their carting businesses. The criminal charges resulted in a number of guilty pleas and the remainder in convictions upon jury verdicts. In June 1996, the City Council enacted a new law, Local Laws, 1996, No. 42 of the City of New York (Local Law 42) (enacting Administrative Code of City of NY tit 16-A), "to protect businesses who [sic] utilize private carting services, and to increase competition in the carting industry with the aim of reducing consumer prices" (Local Law 42 § 1 ["Legislative findings"]).

Among other things, the new law created a Trade Waste Commission, responsible for "licensing, registration and regulation of businesses that remove, collect or dispose of trade waste" (Administrative Code § 16-503), and empowered it to promulgate any rules deemed necessary and appropriate to effect the purposes and provisions of the new law (Administrative Code § 16-504 [i]). The carters must obtain new licenses from the Commission (Administrative Code § 16-505), however carters licensed by the Department of Consumer Affairs were "grandfathered in", provided they submitted new license applications to the Commission by August 3, 1996 (Local Law 42 § 14 [iii] [a] [1]). The Commission may deny a license, after investigation, where it concludes that an applicant lacks good character, honesty and integrity as judged by a number of statutory factors, such as indictment or conviction of certain crimes, failure to provide truthful information to the Commission and knowing association with members of organized crime (Administrative Code §§ 16-508, 16-509). The license is non-transferable (Administrative Code § 16-505 [c]).

The Commission's regulations do not permit a carter to sell its business, customer accounts or goodwill without the Commission's prior approval. Approval must be applied for at least 30 days before the proposed sale (17 RCNY 5-05 [b] [2]).

On July 26, 1996, the Commission gave notice of a public

hearing to allow public comment on proposed rules. On August 26, 1996, prior to the commencement of the public hearing, the Acting Chair of the Commission orally stated, in effect, that it was the Commission's "present intention" to review and determine applications for sale of a carting business or its assets "prior to or by the time of a licensing decision" as to that business. Subsequently, at a May 9, 1997 open meeting of the Commission, the new Chair of the Commission orally announced that effective immediately, the Commission would decide on a case-by-case basis whether it would defer decision on a license application pending determination of a carter's sale application. The Commission, although it did not believe itself obligated to do so, continued to follow the August 26, 1996 policy with regard to sale applications filed on or before May 9, 1997.

Crest Carting Co. (Crest) and its president, Raymond Polidori, were among those indicted in June 1995 for enterprise corruption, grand larceny, coercion and State antitrust law violations, and were also defendants in the civil forfeiture action. In the latter, Supreme Court, New York County ordered, in December 1995, that Polidori be preliminarily enjoined from transferring his assets and appointed a temporary receiver to supervise Crest and a recycling business controlled by Polidori. On August 29, 1996, while the two cases were pending, Crest submitted its license application to the Commission. On February 13, 1997, Crest, Polidori and the recycling company executed a plea agreement in the criminal proceeding wherein they agreed, *inter alia*, to plead guilty to one count of combination in restraint of trade (General Business Law §§ 340, 341), in full satisfaction of the indictment, and Polidori agreed to file a sworn document, prior to sentencing, in which he would accept, *inter alia*, life debarment from the New York City carting industry, but would be permitted to sell any interest acquired before January 1, 1997. He would also be allowed to reclaim and manage the two companies for three months, in the event a purchaser defaulted, but thereafter the assets would have to be liquidated or sold to an approved purchaser. Another provision required the defendants to settle the civil forfeiture action by paying a $100,000 fine and $150,000 in costs. On April 14, 1997, the civil forfeiture action was settled, lifting the preliminary injunction, and on April 17, 1997, the sentence on the guilty plea was imposed. Polidori, however, continued to run the companies, and he and Crest never filed the debarment statement that was to have been filed prior to sentencing. Also, Crest's license application to the Commission was never withdrawn.

On June 6, 1997, Crest submitted an application to sell its customer accounts and goodwill. On July 25, 1997, the Commission denied Crest's license application for lack of good character, finding that there was no reason to hold its decision in abeyance in order to determine the sale application first, since, *inter alia*, it was submitted 9 months after the license application and after the May 9, 1997 change in policy. Crest and Polidori commenced the instant third-party action, before Justice Friedman, to challenge the Commission's determination.

Grasso Public Carting (Grasso) also applied for a trade waste removal license on August 29, 1996, which was denied on August 8, 1997 for lack of good character, "false and perjurious statements" and knowing association with members of organized crime. Grasso had submitted a proposed agreement for sale of its assets in conjunction with its license application, but did not submit a sale application until August 5, 1997. The Commission, in denying the license application, declined to consider the sale application. Upon denial of the license application, Grasso commenced, before Justice Lippmann, an article 78 proceeding seeking preliminary injunctive relief and challenging the Commission's determination.

The Commission's oral pronouncements of August 1996 and May 1997 with regard to the order in which license and sale applications would be processed were not "rules" for purposes of article IV (§ 8) of the New York State Constitution (*see, Matter of Roman Catholic Diocese v New York City Dept. of Health*, 66 NY2d 948, *revg* 109 AD2d 140 *for reasons stated in dissent of Levine, J.; Long Is. Coll. Hosp. v Whalen*, 68 AD2d 274, 276), but rather non-fixed, non-determinative guidelines which, respectively, set forth an interim policy and a discretionary practice (*see, Matter of Henn v Perales*, 186 AD2d 740, 741). Thus, there was no violation here of the notice and filing requirement at article IV (§ 8) applicable to administrative rules and regulations.

Nor did the Commission violate the principle of stare decisis or otherwise act inconsistently with regard to Grasso's and Crest's applications. The Commission was acting in a quasi-legislative rather than quasi-judicial capacity here, hence it was not obligated to explain its adoption of the new non-rule policy, as it would have been were it an inconsistent adjudication (*see, Matter of Insurance Premium Fin. Assn. v New York State Dept. of Ins.*, 88 NY2d 337, 345). Moreover, even if the Commission's actions were quasi-judicial, the carting companies failed to demonstrate any inconsistency in their treatment

in the first place, since, unlike the other carting companies whose sale applications were processed before their license applications, their applications for permission to sell assets were made long after their license applications.

The carters' assertion that they were penalized excessively is without merit. Allegedly, after being fined in the criminal matter, they, in effect, were assessed a second penalty, the inability to sell their assets, due to the denial of their licensing applications. Not only were they partly to blame for this situation, by their belated filing of sale applications, but, in any event, such "penalty" was not excessive under the circumstances. Crest had been charged with a continuous course of misconduct involving numerous crimes committed over a long period of time. Grasso also had been involved in numerous crimes, including perjury and consorting with members of organized crime. These circumstances are readily distinguishable from those in the authorities cited by the carters, such as *Matter of Valentino v State Liq. Auth.* (164 AD2d 830), which involved commission of a first infraction by offenders with theretofore unblemished records (*see also, Matter of 2 W. 125th Liqs. v New York State Liq. Auth.*, 217 AD2d 516).

Crest's plea agreement did not preclude the Commission's action in denying the license. The Commission was not a party to it, it did not purport to preclude such action, it was only applicable to the criminal charges and the permitting of certain, limited sales and asset management activities, and, in any case, Crest and Polidori failed to comply with it by not filing the debarment document prior to sentencing.

We find the carters' remaining contentions to be without merit. Concur—Sullivan, J. P., Wallach, Rubin, Williams and Tom, JJ.