OPINION OF THE COURT
Chief Judge Cooke.
Petitioners, proposed trustees of the Unification Theological Seminary, challenge as arbitrary the denial of a provisional charter by the Board of Regents. The Seminary, an educational institution in Barrytown, New York, is sponsored and financially supported by the Holy Spirit Association for the Unification of World Christianity (“Unification Church”), a religious organization incorporated in California in 1961. Since 1975, the Seminary has offered a two-year graduate program of religious education. Seeking incorporation and the authority to confer Master of Religious Education degrees, petitioners applied to the Board of Regents and Commissioner of Education for a provisional charter. Following a lengthy investigation of the Seminary, its sponsor and the educational program offered, the application was denied.
A review of the proceedings is necessary in order to evaluate petitioners’ claims. The provisional charter application was submitted in April, 1975. The State Education Department reviewed the application, investigated the Seminary and, in June, 1976, the Deputy Commissioner of Higher and. Professional Education issued a report favorable to the Seminary but recommending that action be deferred in light of pending and anticipated investigations of the parent organization. In the fall of 1976, in accordance with Education Department practice, the Seminary was evaluated by two independent consultants. The consultants, while noting certain areas of concern, recommended approval. By February, 1977, the office of counsel for the State Education Department, the Deputy Commissioner of Higher and Professional Education and the Commissioner of Education had recommended approval of the application, which was then forwarded to the Board of Regents for action at the February, 1977 meeting. No action was taken at that time.
*191 In March of that year, legislative resolutions cited recently publicized concern about the policies and practices of the Unification Church and requested the Board of Regents to delay its decision pending investigation. The matter was deferred again following the April meeting of the board, at which Regents Yavner and Griffith, during debate, expressed concern about provisional charter approval, in light of unresolved questions as to faculty and programs and the charges against the Unification Church of involvement with the South Korean government and Korean Central Intelligence Agency (KCIA). They were also concerned about charges that the church and its leaders engaged in or encouraged brainwashing and deceptive practices. Yavner commented critically on the book containing the religious tenets of the church and was of the opinion that it was a political as well as a religious document. Griffith went further to express disapproval of the purposes and activities of the church, which he felt were incompatible with the principles of our society. Yavner moved to delay a decision pending further review by a committee of Regents appointed by the board. The motion carried and Regents Genrich, who would have granted approval and voted against delay, and Yavner together with Bongiorno, another Regent, were appointed to the committee.
Petitioners, dissatisfied with the progress on the Seminary application, commenced an article 78 proceeding in July, 1977 to compel a decision. The proceeding was dismissed upon a determination that the delay was not unreasonable.
In mid-November, 1977, the Regents committee issued a preliminary progress report summarizing the information it had obtained. As to the academic questions, the report summarized the reports of the original consultants and another independent consultant, all of which found the program, facilities and administration adequate. As to the related issues, the committee as yet had found no evidence of a link between the Seminary and the Korean government or KCIA, or of brainwashing at the Seminary or by members of the Unification Church. The committee noted that further investigation by it was necessary because pending investigations by other governmental agen *192 cies had not been completed. Furthermore, information obtained by the committee raised questions concerning the Seminary’s stability, financing plan and dependence upon the Unification Church as its source of income, and the church’s alleged policy of deception in fundraising and recruitment. The Seminary was to be questioned on these matters and given an opportunity to respond.
Petitioners thereafter were requested to furnish affidavits concerning KCIA involvement, recruitment and fundraising techniques of the Unification Church and an audited financial statement from the church. The Education Department, under the direction of the committee, issued a staff report on December 7,1977, which noted that it was still awaiting responses to some of the questions raised in the previous report. The staff also had confirmed that the Unification Church of New York, Inc., the organization upon which the Seminary was to rely for financial support through a lease arrangement, had become inactive, having transferred the majority of its assets and liabilities to the California organization. A request was outstanding for the submission of an alternative financing plan. The staff stated that evidence, in the form of affidavits and statements from former church members, was available concerning deceptive practices used by church members in fundraising and recruitment but that there was no evidence of advocacy of illegal activities by leaders of the church or petitioners or at the Seminary and no evidence that the Seminary, petitioners or Unification Church were involved with the KCIA.
Before the December, 1977 meeting of the Board of Regents, petitioners were provided with copies of and invited to respond to the information that had been received by the committee. The December meeting produced a decision to defer action on the application in light of the receipt of additional allegations against the church and Seminary, including representations of deception concerning the Seminary program and noncompliance with admissions and program requirements established by the Seminary. Petitioners were also informed that the financial statement of the Unification Church, the .substituted *193 lessee of Seminary property, was inadequate and were again requested to submit a statement in audited form.
Petitioners were informed on December 19 that a review team from the Education Department would visit the Seminary on December 20 to review its records. Following that visit, the Education Department and Regents committee recommended that the application be denied. The findings were that the Seminary had represented itself through brochures and transcripts as having .degree-granting status, that the student records showed that some graduates had not completed the number of credits or courses represented by the Seminary to be required, that admissions requirements set up by the Seminary, such as submission of GRE scores, letters of recommendation, and undergraduate transcripts, had not been enforced and that no audited financial statement for the Unification Church had been submitted.
Petitioners were given the opportunity to respond to the committee report and submitted denials of and explanations for the perceived deficiencies, including oversight, program evolution and practical difficulties. The Board of Regents, at the January, 1978 meeting, again deferred action to allow the Education Department to consider petitioners’ response. The Education Department and Regents committee issued a final report in February, which addressed issues disputed in petitioners’ response, found the explanations inadequate to remove concern over the deficiencies and adhered to its recommendation for denial. At the February meeting of the board, that body voted unanimously to deny the application based on the findings and conclusions of the Regents committee reports.
Petitioners commenced the second article 78 proceeding challenging the determination as arbitrary on numerous grounds, including bias, administrative abuse and the application of imprecise standards. Respondents’ motion for summary judgment was granted and the petition dismissed. Petitioners appealed this judgment and the judgment in the first article 78 proceeding to the Appellate Division. That court affirmed both judgments, concluding that the delay in the decision was not unreasonable and that no constitutional rights had been violated by the investigation *194 or determination. Petitioners were granted leave to appeal to this court.
Petitioners maintain that the Board of Regents determination should be annulled as arbitrary because it represents an abuse of the administrative process and the violation of petitioners’ substantive and procedural rights, and because the statutes, rules and regulations under which the Board of Regents acted are unconstitutionally vague. Finally, petitioners urge that summary judgment was improper on this record. Their contentions are not persuasive.
It is well settled that in reviewing administrative action a court may not substitute its judgment for that of the agency responsible for making the determination, but must ascertain only whether there is a rational basis for the decision or whether it is arbitrary and capricious (see Matter of Pell v Board of Educ., 34 NY2d 222, 231, 232). Deference to the judgment of the agency, when supported by the record, is particularly appropriate when the matter under review involves a factual evaluation in the area of the agency’s expertise (see Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459). These principles in mind, it is concluded that the determination to deny has a rational basis.
The Education Department discovered serious inconsistencies between the Seminary’s practice and the method by which it represented it would operate. Student records did not accurately reflect work done and admissions and program standards set up by the Seminary were not adhered to or were changed without publication or notification to the department (see 8 NYCRR 52.2 [d], [e], 52.1 [b], [e]). The erroneous impression was given that the Seminary had degree-granting status (see Education Law, § 224). The records at the very least evidenced inadequate administration. Although the Seminary explained certain inconsistencies, neither the department nor the board was bound to adopt the explanations as sufficient to dispel the impression of poor administration and conduct of the academic program. Finally, following the discovery that the original sponsoring organization had become inactive and a new organization had been substituted, the Seminary failed to submit audited financial statements for the sub *195 stituted organization as requested. Thus, the Seminary failed to satisfy the board of its financial resources (see Education Law, § 218). These deficiencies rationally could be considered contrary to the standards necessary for charter approval.
Unable to challenge the determination on the basis of the findings, petitioners mount a broad-based attack on the entire decisionmaking process as abusive and unlawful and urge that the findings were contrived to mask the board’s predetermined decision to deny the provisional charter.
Initially rejected is petitioner’s argument that the investigation was overbroad, unjustified and impinged upon their associational and religious freedoms. The Board of Regents is charged with broad policy-making responsibility for the State’s educational system (Education Law, § 207) and is specifically empowered to charter institutions of higher education (Education Law, §§216, 217). In the meaningful discharge of those functions and to “encourage and promote education” (Education Law, § 201), the Regents ensure that acceptable academic standards are maintained in the programs offered (see Moore v Board of Regents of Univ. of State of N. Y., 44 NY2d 593). Thus, before an institution may be admitted to the academic community with degree-granting status it must meet established standards (see 8 NYCRR 3.21, 3.22, 52.1, 52.2); its purposes must be “in whole or in part, of educational or cultural value deemed worthy of recognition and encouragement” (Education Law, §216). Given the broad responsibility of the Board of Regents for the quality of education provided in this State, it must be given wide latitude to investigate and evaluate institutions seeking to operate within the system.
It is here urged that the board transgressed permissible limits when it delayed decision beyond February, 1977 to engage in a broad investigation of the policies and practices of the Seminary and its sponsor, even after the favorable recommendations of the Education Department and consultants. Acceptance of this argument in the face of the record would place an unwarranted restriction on the board’s power to discharge its responsibility to the people *196 of this State. The board was not bound by the initial recommendations of the Education Department and the consultants. Areas of concern in the Seminary program identified in the consultants’ reports, such as the extent of faculty accessibility and unclear program objectives and intent, reasonably and justifiably could prompt a request by the board for further study and evaluation. In addition, at the time the application was first submitted to the board for action, substantial public concern about the practices of the Semifiary’s sponsoring organization had been voiced by State and Federal legislators, members of the clergy and others. Reports of KCIA involvement, brainwashing and encouragement of deceptive fundraising and recruitment practices were widespread. The board had a right to investigate the .serious allegations of illegal or unethical conduct on the part of the Seminary sponsors and determine whether the Seminary participated in or encouraged such conduct.
Petitioners do not and cannot dispute that the board validly could deny a provisional charter to an institution that engaged in “brainwashing” and deception. That the broad investigation revealed no evidence of such practices does not mean that it was improperly undertaken in the first instance. The board cannot now be faulted because it discharged its responsibility for ensuring ethical educational programs of quality and in the process discovered serious deficiencies in the conduct of the academic program.
Petitioners also contend that the board’s treatment of the Seminary was discriminatory and infected with bias. Relying on the affidavit of former Education Commissioner Nyquist, they contend that no other applicant has been subjected to such intensive investigation or denied a charter for the deficiencies found. No factual question of discrimination has been raised on this record. Indeed, the only basis for the charge is the Nyquist affidavit, which only conclusorily asserts these statements based on his 25 years experience in the department and his opinion of discriminatory treatment. This is not enough. The applicant’s program deficiencies were amply demonstrated. Nor was it discriminatory to require an audited financial statement of the *197 Unification Church. While the Seminary initially satisfied the Education Department of its financial stability, it did so on the basis of the original financing plan, which relied on the backing of the Unification Church of New York, Inc. Without notice to the department, the plan was changed by substituting the California organization for the now inactive New York corporation. In light of this background, the request for an audited rather than unaudited financial statement was not unreasonable and cannot be termed discriminatory.
Petitioners also maintain that the Board of Regents was biased and unable to render an impartial decision. Of course, an applicant is constitutionally entitled to unprejudiced decision-making by an administrative agency (see Withrow v Larkin, 421 US 35, 46-47; Gibson v Berryhill, 411 US 564). It follows that a determination based not on a dispassionate review of facts but on a body’s prejudgment or biased evaluation must be set aside (see Matter of Rotwein [Goodman], 291 NY 116, 123). But a mere allegation of bias will not suffice. There must be a factual demonstration to support the allegation of bias and proof that the outcome flowed from it. Here, there is neither.
True, two Regents expressed strong opposition to charter approval for the Seminary during the April, 1977 board meeting, noting the charges of political activity, brainwashing and deception. But it was at that same meeting that these Regents requested further investigations. Only one, Regent Yavner, became a committee member. Of the two other members, one was equally outspoken in favor of charter approval. The reports from that committee were frank with respect to the lack of evidence found to substantiate the charges. The Regents’ comments, in the context in which they were made and in the light of subsequent actions of the committee and the board, do not evidence an inability on the part of the particular Regents or the whole board to make an unbiased evaluation of the application once all the facts were in (see Federal Trade Comm. v Cement Inst., 333 US 683). Nor is a question of fact raised as to bias by the isolated statement allegedly made by an unnamed member of the December, 1977 review team that the contro *198 versy was political rather than academic and that the team had come to “find” a basis for the decision about to be made by the board. The source of this statement is unnamed and the facts upon which the statement was based are undisclosed. Such a bare assertion does not establish a fact question warranting denial of summary judgment.
Petitioners also maintain that the statutes, rules and regulations under which the board acted are unconstitutionally vague and lacking in objective standards. This court has not hesitated to annul a determination predicated on rules and regulations that allow wholly subjective decisionmaking without adequate “safeguards against the exercise of arbitrary power or simple unfairness” (Matter of Nicholas v Kahn, 47 NY2d 24, 34; Matter of Levine v Whalen, 39 NY2d 510, 519). Here, however, no such unrestrained power is evident. Rather, the scheme for provisional charter approval is integrated with that for program registration and provides sufficiently objective standards to enable meaningful judicial review (see Education Law, §§216, 217, 218; 8 NYCRR 3.21, 3.22, 13.1, 52.1, 52.2; see, also, Moore v Board of Regents of Univ. of State of N. Y., 44 NYd 593, supra). It must be remembered that in the area of determining qualifications for educational institutions, where the nature and quality of programs necessarily will vary, precise criteria cannot be expected or demanded. The statutes and regulations at issue here offer sufficiently concrete guidelines and standards for judging an applicant to prevent the unfettered or arbitrary exercise of discretion.
The record reveals that no material factual question has been raised by petitioners concerning bias or an abuse of the administrative process. Petitioners were not denied due process by the procedures employed. Summary judgment was properly granted.
Accordingly, the orders of the Appellate Division should be affirmed, with costs.