OPINION OF THE COURT
George B. Ceresia, Jr., J.
The petitioner is currently a Judge of the New York State Court of Claims, having been appointed by Governor Pataki and confirmed by the New York State Senate, effective June 30, 2003. Petitioner’s appointment to the Court of Claims was pursuant to Court of Claims Act § 2 (2) (b). As a “paragraph (2) (b)” judge, petitioner was assigned to sit as an acting New York State Supreme Court Justice. In that capacity petitioner has performed the usual duties and responsibilities customary to a New York State Supreme Court Justice hearing criminal cases.
Prior to the petitioner’s appointment as a Court of Claims Judge, petitioner had served approximately 24 years as an assistant district attorney (June 1972 to July 1996). In July 1996, he was appointed to the position of Judge of the Nassau County District Court. He was elected to that position in November 1996, and continued to serve as Nassau County District Court Judge until December 31, 2002. During all of this time, petitioner was enrolled as a member of the New York State and Local Employees’ Retirement System.
In November 2002, petitioner contacted the Office of Court Administration (OCA) seeking guidance with respect to retirement options, and how these options might impact his right to future employment. Petitioner subsequently met with OCA employee Brigid Gambella, OCA’s Júdiciary Benefits Administrator. Among the matters allegedly discussed with Ms. Gambella was how petitioner’s pension benefits might be affected if, after his retirement, he was subsequently appointed to the position of Judge of the Court of Claims. Petitioner indicates that Ms. Gambella advised him that if he were appointed to the Court of Claims, OCA would grant him a “211 waiver” pursuant to Retirement and Social Security Law § 211 in order to permit him to simultaneously receive both his full pension and his judicial salary.
Petitioner contends that based upon the advice he had received from Ms. Gambella he decided to retire and enter private practice, while simultaneously pursuing an appointment *521 to the Court of Claims.[1] On November 27, 2002, he submitted his application for retirement. By letter dated December 9, 2002, petitioner received an estimate of the amount of pension he would receive. By letter dated January 7, 2003, petitioner was informed that his annual pension (for the option he had selected) would be $75,534. As. noted, petitioner was appointed to the Court of Claims effective June 30, 2003. By letter dated July 25, 2003, the retirement system advised petitioner that it was aware that petitioner had returned to the public sector. The letter, as relevant here, indicated that if the section 211 waiver was granted, his earnings limit would be $36,000, and that once his earnings reached this amount, payment of his pension would be suspended. Petitioner subsequently applied for, and received the section 211 waiver. He thereafter requested a hearing with respect to the $36,000 earnings limit. A hearing was conducted, and on December 9, 2004, the hearing officer recommended that petitioner’s application be denied. In a determination dated December 28, 2004, the respondent accepted the findings and conclusions of the hearing officer and determined that petitioner’s application must be denied.
As noted, petitioner indicates that as a Court of Claims Judge, he has been assigned to hear criminal cases as an acting New York State Supreme Court Justice. He asserts that because he is performing all of the functions of a Supreme Court Justice, which is an elective public office, he falls within an exception to Civil Service Law § 150, which governs the suspension of retirement benefits of civil service retirees who resume public service.
The court is mindful that the court’s role in reviewing an administrative determination is not to substitute its judgment for that of the agency, but simply to ensure that the agency determination has a rational basis and is not arbitrary and capricious (see, Matter of Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d 186, 194 [1981]; Flacke v Onondaga Landfill Sys., 69 NY2d 355, 363 [1987]; Akpan v Koch, 75 NY2d 561, 571 [1990]). “The arbitrary or capricious test chiefly relates to whether a particular action should have been taken or is justified . . . and whether the administrative action is without *522 foundation in fact” (Matter of Pell v Board of Educ. of Union-Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974] [citation and internal quotation marks omitted]). Phrased differently, “[arbitrary action is [that which is] without sound basis in reason and is generally taken without regard to the facts” (id.).
When dealing with matters of statutory construction and/or legislative interpretation, “[w]here the statute is clear and unambiguous on its face, the legislation must be interpreted as it exists” (Doctors Council v New York City Employees’ Retirement Sys., 71 NY2d 669, 674 [1988]; see also, Matter of Judge Rotenberg Educ. Ctr. v Maul, 91 NY2d 298, 303 [1998]). “Absent ambiguity the courts may not resort to rules of construction to broaden the scope and application of a statute” (Doctors Council v New York City Employees’ Retirement Sys., supra at 674). “ ‘[W]here the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ ” (Matter of Raritan Dev. Corp. v Silva, 91 NY2d 98, 107 [1997], quoting Patrolmen’s Benevolent Assn, of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976], and citing Doctors Council v New York City Employees’ Retirement Sys., supra at 674-675).
Civil Service Law § 150 recites in pertinent part as follows:
“Except as otherwise provided by sections one hundred one, two hundred eleven, and two hundred twelve of the retirement and social security law . . . and except as now provided by any local law or charter, if any person subsequent to his or her retirement from the civil service of the state or of any municipal corporation or political subdivision of the state, shall accept any office, position or employment in the civil service of the state or of any municipal corporation or political subdivision of the state to which any salary or emolument is attached, except jury duty or the office of inspector of election, poll clerk or ballot clerk under the election law, or the office of notary public or commissioner of deeds, or an elective public office, any pension or annuity awarded or allotted to him or her upon retirement, and payable by the state, by such municipal corporation or political subdivision, or out of any fund established by or pursuant to law, shall be suspended during such service or employment and while such person is receiving any salary or emolu *523 ment therefor except reimbursement for traveling expenses.” (Civil Service Law § 150.)
It has been held that interpretation of the provisions of Civil Service Law § 150 does not require expertise or special competence of the administrative agency (see Matter of Baker v Regan, 114 AD2d 187, 190 [3d Dept 1986], affd in part and read in part 68 NY2d 335 [1986]).
In Matter of Baker v Regan (68 NY2d 335 [1986]), it was stated:
“Our Legislature has for over a half century evinced a strong public policy in favor of the suspension of retirement benefits of a person who after retiring accepts an office in the civil service of the State. Although exceptions have been made to this general proscription, it is clear that such exceptions were enacted for limited purposes and were not meant to abrogate or dilute the long-standing and overriding State policy to prohibit the receipt of retirement benefits and salary at the same time which could constitute an abuse of the public fisc.” (Matter of Baker v Regan, 68 NY2d 335, 341 [1986] [citations omitted].)
As noted in Matter of Baker v Regan (114 AD2d 187 [1986], supra):
“Civil Service Law § 150 generally suspends the retirement benefits of persons who, subsequent to their retirement from State service, accept public office. The ‘elective public office’ exception to this suspension of retirement benefits is intended to encourage qualified retirees to run for public office after their retirement (see, sponsor’s memorandum, 1984 NY Legis Ann, at 84). While the language of this exception is quite broad, it must be considered in the context of the general proscription of ‘double dipping’ (see, Brown v New York State Teachers’ Retirement Sys., 107 AD2d 103, 107).” (Matter of Baker v Regan, supra at 191.)
The court agrees with respondent that petitioner did not accept elective public office within the meaning of Civil Service Law § 150 when he was appointed by the Governor to the New York State Court of Claims. His position is appointive, not elective, and was not converted to elective office merely by reason of his assignment to New York State Supreme Court. While the respondent concedes that petitioner would have fallen within *524 the elective public office exception had he been appointed to Supreme Court,[2] as respondent points out, that simply is not the situation at bar. The court finds that respondent’s interpretation of the term “elective public office,” and his determination to deny petitioner’s application has a rational basis.
Turning to the issue of equitable estoppel, ordinarily, this doctrine may not be invoked against the State or a governmental agency (see Piscitella v City of Troy, 229 AD2d 767, 768 [3d Dept 1996]; Matter of Karp v North Country Community Coll., 258 AD2d 775, 776 [3d Dept 1999]). As petitioner points out, there exists a narrow exception to the general rule where unusual circumstances exist (see, Matter of Daleview Nursing Home v Axelrod, 62 NY2d 30, 33 [1984]; Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 93 n 1 [1981]). While this is true, it is also well settled that “erroneous advice given by an employee of a governmental agency is not considered to rise to the level of an unusual circumstance” (Matter of Smith v New York State & Local Retirement Sys., 199 AD2d 763, 764 [3d Dept 1993]; Matter of Schwartz v McCall, 300 AD2d 887, 889 [3d Dept 2002]; Matter of Champagne v Regan, 191 AD2d 895 [3d Dept 1993]; Matter of Limongelli v New York State Employees’ Retirement Sys., 173 AD2d 904, 906 [3d Dept 1991]; Matter of Estate of Gallo v New York State Teachers’ Retirement Sys., 121 AD2d 24, 27 [3d Dept 1986]).
The court finds that petitioner is not entitled to the benefit of the doctrine of equitable estoppel.
The court finds that respondent’s determination was not made in violation of lawful procedure or affected by an error of law. Nor is it irrational, arbitrary and capricious, or an abuse of discretion. The court concludes that the petition must be dismissed.
Accordingly, ordered and adjudged that the petition be and hereby is dismissed.

. Petitioner indicates that he had considered other options as well. One such option was running for the office of Nassau County Court Judge in November 2003. Petitioner indicates that he had been informed that if he elected to run for this position he would receive the backing of three political parties, rendering it likely that he would win the election. A second option was to accept an offer to return to the Nassau County District Attorney’s office where, as petitioner asserts, he would be able to receive his full pension.

. Retirement and Social Security Law § 101 (d) (1) recites as follows:
“A retired member, unless otherwise disqualified, shall be eligible to:
“(a) Election to a state office, or
“(b) Appointment to fill a vacancy in an elective state office, or
“(c) Appointment as an official referee.” Petitioner’s assignment to Supreme Court is not the equivalent of filling a vacancy in elective state office.