*797 OPINION OF THE COURT
Lucy Billings, J.
I. Background
Petitioner operates a parking garage at 283 East 164th Street, Bronx County, near the Bronx County courthouses. Upon commencing this proceeding, petitioner sought to enjoin respondents’ enforcement of an order padlocking the garage based on their determination that petitioner was operating the garage without a license. Respondents, including the New York City Department of Consumer Affairs (DCA) and its officers, agreed to a temporary injunction pending this decision. When petitioner commenced this proceeding on April 19, 2007, respondents had informed petitioner that the impediments to issuing a license for the garage were (1) the absence of a certificate of occupancy for that use and (2) the questionable accuracy of the residence address provided for Andrew Meyer, petitioner’s managing member, in the license application. Respondents had rejected petitioner’s license application on April 11, 2007, without a written decision or specification of other reasons. Since this determination was not subject to further administrative review, and CPLR 7803 does not require a written decision for this court to review the determination (see Matter of Rocco v Kelly, 20 AD3d 364, 367 [1st Dept 2005]; Matter of Rakiecki v State Univ. of N.Y., 31 AD3d 1015, 1016 [3d Dept 2006]; Matter of Feldman v New York State Teachers’ Retirement Sys., 14 AD3d 769, 770 [3d Dept 2005]; Matter of Hill Park Health Care Ctr., Inc. v Novello, 12 AD3d 1010, 1012 [3d Dept 2004]), this denial constitutes a final agency determination for the court’s review. (Matter of City of New York [Grand Lafayette Props. LLC], 6 NY3d 540, 547-548 [2006]; Matter of Best Payphones, Inc. v Department of Info. Tech. & Telecom. of City of N.Y., 5 NY3d 30, 34-35 [2005]; Matter of Essex County v Zagata, 91 NY2d 447, 453-454 [1998]; Matter of Edmead v McGuire, 67 NY2d 714, 716 [1986]; see e.g. Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 519-520 [1986]; Matter of Karedes v Colella, 292 AD2d 138, 140 [3d Dept 2002].)
Shortly after commencing the proceeding, however, the parties agreed that petitioner would submit a new, complete, and accurate license application. Petitioner submitted the new application on May 3, 2007, and obtained the required certificate of occupancy by May 11, 2007. Respondents then denied the new application in a written decision dated May 31, 2007, based on their “finding that [Andrew Meyer] lack[ed] the integrity *798 required of business owners licensed by the New York City Department of Consumer Affairs.” (Affidavit of Andrew Meyer, June 28, 2007, exhibit C at 1.)
II. Respondents’ Reliance on Administrative Code of the City of New York § 20-321 (b)
In denying petitioner a license, respondents relied on Administrative Code of the City of New York § 20-321 (b), which provides that “[a] license to maintain, operate or conduct a garage or parking lot shall be granted to a person of good character, in accordance with the provisions of this subchapter and the rules and regulations of the commissioner.” No other provisions of sub chapter 17 of chapter 2 of title 20 of the Administrative Code shed any light on the meaning of “good character.” (Administrative Code § 20-321 [b].) Nor do any regulations promulgated by the DCA Commissioner. (6 RCNY 1-01 — 1-16, 2-161; see Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d 196, 201 [2007]; Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 258 [2004]; Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 863-864 [2003]; Matter of Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d 402, 407-408 [1997].)
A. Licensing Statutes
Administrative Code § 20-321 (b) parallels other provisions of chapter 2, governing licenses issued by DCA. Administrative Code § 20-392 (a) (3), for example, permits the denial, suspension, or revocation of a home improvement business license if the contractor is “untrustworthy or not of good character.” Administrative Code § 20-498 (a) and (b) permit the denial of a towing or tow truck license if the applicant does not satisfy the DCA Commissioner that he or she “possesses good moral character.”
Yet other provisions, in contrast, require applicants to be fingerprinted {e.g. 6 RCNY 1-01 [a]; Administrative Code § 20-266 [c] [dealers in second-hand articles]; § 20-279 [c] [auctioneers]; § 20-306 [b] [locksmiths]; § 20-406 [b] [process servers]; § 20-412 [2] [appliance services]; § 20-497 [a] [towing]; § 20-532 [a] [booting of vehicles]), and permit the denial, suspension, or revocation of a license to conduct a particular business only if the applicant: (1) was convicted of a crime bearing on fitness to conduct the business {e.g. Administrative Code §§ 20-266.1 [dealers in second-hand articles], 20-279.1 [auctioneers], 20-306.1 [locksmiths], 20-409 [b] [process servers]; § 20-420 [g] *799 [appliance services]; § 20-428 [d] [dealers in products for the disabled]; § 20-431 [a] [dealers in products for the disabled]; § 20-467 [f] [public vendors]; § 20-504 [e] [towing]; § 20-504.1 [b] [towing]); (2) violated other specified laws (e.g. Administrative Code § 20-206 [a] [3] [cigarette dealers]; § 20-358 [f] [bingo]; § 20-361 [a] [5] [dance halls, cabarets, and catering]; § 20-420 [h] [appliance services]; § 20-431 [e] [dealers in products for the disabled]; § 20-485.3 [a] [electronics]; § 20-504.1 [e] [towing]); or (3) engaged in material misrepresentation or concealment in connection with the application or conduct of the business (e.g. 6 RCNY 1-01.1; Administrative Code § 20-206 [a] [1] [cigarette dealers]; § 20-358 [a], [c], [d] [bingo]; § 20-420 [a]-[f] [appliance services]; § 20-431 [b], [c] [dealers in products for the disabled]; § 20-450 [1], [3], [4] [games of chance]; § 20-467 [a], [c] [public vendors]; § 20-485.3 [b], [c] [electronics]; § 20-504 [c] [towing]). Other provisions offer applicants a hearing on their qualifications and the application’s merits before denial, suspension, or revocation of a license. (E.g. Administrative Code § 20-345 [a] [bingo]; §§ 20-419 [appliance services], 20-432 [dealers in products for the disabled], 20-439, 20-449 [games of chance], 20-460 [public vendors], 20-485.2, 20-485.3 [electronics], 20-504 [towing].)
B. Petitioner’s Challenge to Administrative Code § 20-321 (b)
Petitioner’s second cause of action (verified petition 11 36) claims, pursuant to CPLR 7803 (3), that respondents’ denial of a parking garage license to petitioner for 283 East 164th Street is arbitrary and capricious and asks the court to order respondent to issue the license. (CPLR 7806.) Petitioner’s third cause of action for interim injunctive relief claims that respondents’ denial of the parking garage license is arbitrary and capricious, particularly in that the decision-making process fails to provide any opportunity to challenge respondents’ determinations. (Verified petition 1i 41; CPLR 7803 [3].) Petitioner’s fourth cause of action claims that this failure to provide adequate means to challenge respondents’ determinations violates due process guarantees (verified petition 1Í 46; CPLR 7803 [3]; US Const 14th Amend; NY Const, art I, § 6), and also seeks an order granting the license. (CPLR 7806.) This broad constitutional challenge is reasonably interpreted as encompassing petitioner’s attack on Administrative Code § 20-321 (b) for vagueness, on its face and as applied. (People v Stuart, 100 NY2d 412, 419 [2003].)
In denying petitioner a license on May 31, 2007, respondents listed approximately seven single spaced pages of factual *800 grounds. Insofar as they are sufficiently specific, petitioner contests their accuracy. They do, however, provide petitioner actual notice of conduct, by petitioner, Meyer, or other entities to which respondents claim Meyer was connected, that respondents considered impermissible. (Town of Concord v Duwe, 4 NY3d 870, 874 [2005].)
Had respondents provided petitioner this notice before petitioner’s renewed submission on May 3, 2007, they might survive a constitutional challenge to their application of Administrative Code § 20-321 (b). (Town of Concord v Duwe, 4 NY3d at 874.) As set forth above, however, and undisputed by respondents, the only advance notice from them to petitioner regarding actions or omissions that barred a license for the parking garage were the failures (1) to obtain a certificate of occupancy for that use and (2) to show that the residence address for Meyer in the application was accurate. Although respondents cite the false statement of Meyer’s home address on petitioner’s prior application as one of the many grounds for denying the license on May 31, 2007, before petitioner submitted the May 2007 application, Meyer showed that his residence address in the prior application was accurate. Specifically, he explained that because of a contentious divorce, he currently lacked a permanent address and was residing with his attorney, who was also Meyer’s friend. Thus the address provided was his current, if not permanent, address. He also supplemented the prior application with an updated permanent address. Respondents had never indicated that the prior questionable address, once explained, or once supplanted with a new, accurate address, would forever bar the license. Moreover, since respondents cited a myriad of other grounds for denying the license on May 31, 2007, it is impossible to determine that respondents considered the prior questionable address, alone, a sufficient basis to deny the subsequent application.
III. The Statute’s Vagueness in Violation of Due Process
If Administrative Code § 20-321 (b) fails to provide adequate (1) notice of required conduct or (2) standards to the persons charged with enforcing the statute, it is unconstitutionally vague. When it requires or forbids acts “in terms so vague” that persons of ordinary intelligence must guess at its meaning and “differ as to its application,” the statute violates due process guarantees. (People v Stuart, 100 NY2d at 419; see Broadrick v Oklahoma, 413 US 601, 607 [1973].)
Thus, to satisfy due process, Administrative Code § 20-321 (b) must meet a two-part test. First, to ensure that license ap-
*801 plicants are not denied licenses for failure to undertake action or engage in conduct not reasonábly understood to be required, the court must determine whether the statute is sufficiently definite “to give a person of ordinary intelligence fair notice” that specific conduct by the applicant is required for the license to be granted. (People v Stuart, 100 NY2d at 420; People v Nelson, 69 NY2d 302, 307 [1987]; see Broadrick v Oklahoma, 413 US at 608; County of Nassau v Canavan, 1 NY3d 134, 138 [2003]; Matter of Travis S., 96 NY2d 818, 820 [2001]; Ulster Home Care v Vacco, 96 NY2d 505, 509 [2001].) Conversely, if specific conduct by license applicants will prevent a license from being granted, the court must determine whether the statute gives fair notice that specific conduct by the applicant is proscribed, to ensure that applicants are not denied for action or conduct not reasonably understood to be impermissible.
Second, the court must determine whether the statute gives officials charged with granting licenses clear standards for carrying out that duty. (Kolender v Lawson, 461 US 352, 357 [1983]; Grayned v City of Rockford, 408 US 104, 108 [1972]; People v Stuart, 100 NY2d at 420-421; People v Nelson, 69 NY2d at 307.) The “requirement that a legislature establish minimal guidelines” to govern enforcement of a statute is of “primary importance.” (County of Nassau v Canavan, 1 NY3d at 138.) If Administrative Code § 20-321 (b), in delegating licensing determinations to city officials, permits them to grant or deny licenses on an ad hoc, subjective basis, the statute poses a danger of arbitrary application and thus is unconstitutionally vague. (Grayned v City of Rockford, 408 US at 108-109; Coates v Cincinnati, 402 US 611, 614 [1971]; County of Nassau v Canavan, 1 NY3d at 138; People v Stuart, 100 NY2d at 421.)
Under this rubric, even if the notice before petitioner’s May 2007 submission of the two grounds for denying a license or the subsequent notice in the May 2007 denial itself was adequate to sustain Administrative Code § 20-321 (b)’s application to petitioner, petitioner’s facial challenge to the statute’s vagueness still may succeed under limited circumstances. (Town of Concord v Duwe, 4 NY3d at 874-875.) Frequently, if a challenge to a statute for vagueness as applied lacks merit, because the statute as applied did provide adequate notice that the challenger’s conduct would be proscribed, then a facial challenge also will fail, because the challenger’s circumstances show at least one situation where the statute may be applied constitutionally. (Id.; People v Stuart, 100 NY2d at 422-423; see People v *802 Garcia, 29 AD3d 255, 261 [1st Dept 2006]; Matter of Fernandez v New York City Taxi & Limousine Commn., 193 AD2d 423 [1st Dept 1993].) Nonetheless, accepting the dubious proposition that petitioner had notice, petitioner still may prevail in a facial challenge where the statute is so vague that it leaves the enforcer “with arbitrary rather than enforceable standards in every application.” (Town of Concord v Duwe, 4 NY3d at 875; People v Stuart, 100 NY2d at 423 n 9.)
Because legislative enactments are presumed to be constitutional, petitioner bears a heavy burden to establish Administrative Code § 20-321 (b)’s facial vagueness, such that the statute violates due process by leaving respondents with arbitrary standards and without enforceable standards in every application of the statute. (People v Stuart, 100 NY2d at 422; People v Bright, 71 NY2d 376, 382 [1988].) Here, however, both the court and petitioner are at a loss to determine what conduct the applicant must demonstrate to satisfy respondents it is “of good character” (Administrative Code § 20-321 [b]) so that they will grant the applicant a parking garage license. (People v Bright. 71 NY2d at 385; see County of Nassau v Canavan, 1 NY3d at 138-139; People v Garcia, 29 AD3d at 261.) In addition, infinite character flaws are easily imaginable, bearing no relation to an applicant’s fitness for a business, yet providing a basis to deny a license under this statutory requirement and placing “complete discretion” in respondents’ hands to impose that penalty against any entity in which respondents perceive such a flaw. (People v Stuart, 100 NY2d at 423; People v Bright, 71 NY2d at 385; see Coates v Cincinnati, 402 US at 614-615 n 4; Matter of Levine v Whalen, 39 NY2d 510, 517-518 [1976].)
Various acts or omissions, such as violation of a law bearing on fitness for the licensed business (e.g. Administrative Code § 20-206 [a] [3]; §§ 20-266.1, 20-279.1, 20-306.1, 20-358 [f|; § 20-361 [a] [5]; § 20-409 [b]; § 20-420 [g], [h]; § 20-428 [d]; § 20-431 [a], [e]; § 20-467 [fl; § 20-485.3 [a]; § 20-504 [e]; § 20-504.1 [b], [e]), or material misrepresentation or concealment in the license application or the business (e.g. 6 RCNY 1-01.1; Administrative Code § 20-206 [a] [1]; § 20-358 [a], [c], [d]; § 20-420 [a]-[f]; § 20-431 [b], [c]; § 20-450 [1], [3], [4]; § 20-467 [a], [c]; § 20-485.3 [b], [c]; § 20-504 [c]), even conduct petitioner itself has engaged in, might well justify denying a license. The companion statutes to Administrative Code § 20-321 (b) cited above illustrate how, through the enactment and enforcement of statutes specifically directed at proscribed acts, the City may prevent the issuance of *803 licenses to businesses that have engaged in countless forms of conduct. (Coates v Cincinnati, 402 US at 614.)
Respondents have denied petitioner a license, however, by enforcing an enactment, the enforcement of which may depend entirely on whether the particular agency decision-maker perceives a character flaw in the applicant unrelated to its fitness for operating a parking garage. (Id.; People v Stuart, 100 NY2d at 425; Levine v Whalen, 39 NY2d at 517-518.) Administrative Code § 20-321 (b), in contrast to the many companion statutes cited above, confers unrestrained power on agency officials to consider conduct reflective of poor character based merely on their own personal, subjective sensibilities or notions of good versus mediocre character or the idiosyncracies of the official or the applicant. (Coates v Cincinnati, 402 US at 613; People v Stuart, 100 NY2d at 428; People v Bright, 71 NY2d at 383; People v Nelson, 69 NY2d at 308; see Matter of Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d 186, 198 [1981]; Levine v Whalen, 39 NY2d at 519; Matter of Dawson v Village of Spring Val., 151 Misc 2d 128, 133-134 [Sup Ct, Rockland County 1991].)
The words “good” and “character” both are widely used, but, consequently, are susceptible of multiple and varied meanings. (Administrative Code § 20-321 [b].) The absence of interpretive statutory or regulatory provisions relegates the enforcers and their objects, license applicants, to the two words of the statute itself. While these two common words may set a comprehensible normative standard, they are so imprecise that it is as if “no standard of conduct is specified at all.” (Coates v Cincinnati, 402 US at 614; see Levine v Whalen, 39 NY2d at 516.) Even “good moral character,” although a far cry from the imprecision of the two words alone, is an “unusually ambiguous” term that “necessarily reflect[s] the attitudes, experiences, and prejudices of the definen” (Konigsberg v State Bar of Cal., 353 US 252, 262-263 [1957].) Many applicants may have engaged in activity innocuous to one official, but a sign of poor character to another official, a determination left solely to the official on the job. (People v Bright, 71 NY2d at 387.)
Administrative Code § 20-321 (b) thus “furnishes a convenient tool” for these city officials’ harsh and discriminatory denial of licenses to particular applicants “deemed to merit their displeasure.” (Papachristou v Jacksonville, 405 US 156, 170 [1972]; People v Bright, 71 NY2d at 383; see Dawson v Village of Spring Val., 151 Misc 2d at 133.) Even if officials harbor *804 no malevolence, it is as impossible for them as for any applicant to conform themselves to section 20-321 (b)’s statutory requirement when the statute fails to set an ascertainable standard. (Coates v Cincinnati, 402 US at 614-615 n 4; see Dawson v Village of Spring Val., 151 Misc 2d at 133.)
Absent any objectively defined conduct by the applicant that either requires a license to be granted or allows it to be denied to the applicant (People v Bright, 71 NY2d at 385), Administrative Code § 20-321 (b) leaves “the possibility that the law will be arbitrarily enforced” wide open. (People v Bright, 71 NY2d at 384; see Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d at 198; Levine v Whalen, 39 NY2d at 519; Dawson v Village of Spring Val., 151 Misc 2d at 132.) Even without considering the details of the conduct respondents found to justify denying petitioner a parking garage license, section 20-321 (b) on its face sets a requirement, “good character,” that is unconstitutionally vague and violates the due process guarantees under the Federal and State Constitutions. (US Const 14th Amend; NY Const, art I, § 6.) It fails to distinguish between conduct that is necessary or permissible and conduct that is proscribed and impermissible on the part of a prospective licensee, in understandable terms with which an applicant may comply. (See Broadrick v Oklahoma, 413 US at 607-608.) The details of petitioner’s conduct would not validate the statute. (Coates v Cincinnati, 402 US at 616; see Fernandez v New York City Taxi & Limousine Commn., 193 AD2d at 423.) Consequently, even if denying petitioner a license would be justifiable under a constitutional statute, the denial under an unconstitutionally vague statute is invalid. (Coates v Cincinnati, 402 US at 616; People v Stuart, 100 NY2d at 425.)
IV The Statute’s Invitation to Arbitrary Enforcement
When the New York City Council decides to require licenses for particular businesses and authorizes the Commissioner of DCA to grant or deny those licenses, the agency must do so fairly, not arbitrarily. (General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 254; Matter of Abraham & Straus v Tully, 47 NY2d 207, 213-214 [1979].) “[T]he Legislature may declare its will, and after fixing a primary standard, endow administrative agencies with the power to fill in the interstices in the legislative product by prescribing rules and regulations consistent with the enabling legislation.” (General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 254; Medical Socy. *805 of State of N.Y. v Serio, 100 NY2d at 865; Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979]; see Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d at 201.)
A closely regulated arena such as licensed businesses may need flexibility to adapt to variable situations. To accommodate that need, a legislative enactment may rely on agency expertise, delegate broad authority to an agency to implement regulations prescribing the details and fulfilling the goals of the policy embodied in the statute, and vest the agency with reasonably wide discretion to make decisions consistent with those prescriptions. (Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d at 201; General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 258; Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d at 407-408; Matter of Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d 186, 191 [1988].) Such a delegation is constitutional only if the legislature limits the field in which the agency’s “discretion is to operate and provides standards to govern its exercise.” (Id.; Levine v Whalen, 39 NY2d at 515; see Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d at 198; Dawson v Village of Spring Val., 151 Misc 2d at 132.)
Here, however, Administrative Code § 20-321 (b)’s “good character” condition fails to fix any “primary standard” or objective statutory test, and no implementing regulations articulate anything. (General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 254; Nicholas v Kahn, 47 NY2d at 31; see Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d at 405-406.) Thus neither section 20-321 (b) nor any regulation contains any policy, let alone objective standards, to guide respondents’ exercise of authority and discretion in their decision making. (Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d at 407-408; Nicholas v Kahn, 47 NY2d at 28, 33-34.) Each decision by respondents applying the statute interprets it anew, because “a person of good character” (Administrative Code § 20-321 [b]) is no different than one “acceptable” to or as “determined,” “approved,” or “permitted” by the agency decision maker. (Levine v Whalen, 39 NY2d at 519.) While respondents’ interpretation of a statute that they are charged to administer may be upheld if the interpretation is rational (e.g. Goodwin v Perales, 88 NY2d 383, 392 [1996]), neither section 20-321 (b) nor any interpretive regulation articulates a standard against which to *806 measure a decision’s rationality. (Nicholas v Kahn, 47 NY2d at 33-34; Levine v Whalen, 39 NY2d at 518-519.) “Being subjective and in the absence of objectivity” (id. at 519), the “good character” condition (Administrative Code § 20-321 [b]) is irrational, “arbitrary and therefore invalid.” (Levine v Whalen, 39 NY2d at 519.)
By delegating unbounded latitude to respondents in their administrative actions, the statute leaves their decisions subject to untrammeled discretion, which in turn is unreviewable. (CPLR 7803 [3]; Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d at 408; Nicholas v Kahn, 47 NY2d at 28, 33-34; Dawson v Village of Spring Val., 151 Misc 2d at 134.) Any agency determination under a statute that allows “wholly subjective decision making without adequate ‘safeguards against the exercise of arbitrary power or simple unfairness’ ” or “standards to enable meaningful judicial review” must be annulled. Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d at 198, quoting Nicholas v Kahn, 47 NY2d at 34.)
In sum, since neither Administrative Code § 20-321 (b) nor any implementing regulation offers any concrete standard for evaluating a license applicant, the statute allows unfettered, arbitrary administrative decision making, without a standard to enable judicial review. Consequently, respondents’ decisions denying petitioner a parking garage license under this statute may not stand. (CPLR 7803 [3]; 7806; Nicholas v Kahn, 47 NY2d at 34; see Warder v Board of Regents of Univ. of State of N.Y., 53 NY2d at 198.)
V. Supplying and Applying Interpretive Standards for Respondents’ Decision Making
A. Supplying Applicable Interpretive Standards
The “good character” condition set by Administrative Code § 20-321 (b) may be interpreted in light of the business regulation conditions to which the statute applies. (Nicholas v Kahn, 47 NY2d at 31.) Whether for respondents’ initial decisions granting or denying a license, for an administrative hearing on a license application, or for judicial review of a denial, regulations articulating objective standards for respondents’ determinations under section 20-321 (b) would provide a necessary framework for interpreting and applying the statute.
In the absence of any further standard other than “good character” in Administrative Code § 20-321 (b) or anywhere in subchapter 17, to which section 20-321 (b) refers, statutes beyond subchapter 17 may be a reference point for interpretive *807 regulations under section 20-321 (b). Administrative Code § 20-101 sets forth the purposes of business licensing by respondents: protecting and relieving “the public from deceptive, unfair and unconscionable practices”; maintaining “standards of integrity, honesty and fair dealing”; protecting “health and safety”; and “promoting the general welfare.” (See Matter of V&A Towing v City of New York, 197 AD2d 386, 387 [1st Dept 1993]; Matter of Laureiro v New York City Dept. of Consumer Affairs, 41 AD3d 717, 719-720 [2d Dept 2007].) Chapter 2’s provisions, which include section 20-321 (b), are to be construed according to those purposes. (Administrative Code § 20-103.) While neither section 20-321 (b) nor respondents’ denials of petitioner’s applications incorporate any standard other than “good character” (Administrative Code § 20-321 [b]), or “integrity” (Meyer affidavit, exhibit C at 1), reference to those other statutes for a more objective standard, absent interpretive regulations, still does not shore up respondents’ decisions on this record.
B. The May 2007 Decision Based on Lack of Integrity
Insofar as the court need consider further the grounds for respondents’ decisions, given the constitutional infirmities discussed, the record in this proceeding contains no evidence that Andrew Meyer ever has been charged with, let alone convicted of, a crime or even a noncriminal offense. Examples of the factual grounds that respondents list in denying petitioner a license on May 31, 2007, based on Meyer’s lack of “integrity” fall into the following categories. (Meyer affidavit, exhibit C at 1.)
1. Petitioner’s unlicensed parking facility activity: First, respondents cite petitioner’s operation of its 283 East 164th Street lot pending its submission and respondents’ determination of a complete and accurate license application. During this proceeding, respondents stipulated to this activity. Previously, petitioner in good faith believed they also had agreed to this activity on a similar interim basis and in exchange for the statutory remedy for such activity: petitioner’s payment of the required fine. (Administrative Code § 20-106 [b].) While respondents dispute their noncompliance with this claimed agreement as a basis for annulling their denial of the license to petitioner (CPLR 7803 [3]; 7806), petitioner’s reliance on the agreement at minimum deflects any implication of criminality, dishonesty, or immorality in this interim unlicensed operation.
Respondents also list petitioner’s operation of the 283 East 164th Street lot without the necessary zoning variance and cer *808 tificate of occupancy. Since operation of the lot without these prerequisites was subject to the same agreements discussed above, this activity does not provide an independent ground for respondents’ determination. Nor does this activity indicate any criminality, dishonesty, or immorality on the part of petitioner or Meyer.
2. Inaccurate application information: Respondents’ preoccupation with Meyer’s residence address persists in their May 2007 decision. First, in continuing to reject the friend’s address that Meyer previously provided as his temporary residence, respondents point to an inconsistency between “118 St. Paul Place, Garden City, NY 11550,” provided initially, and “118 St. Paul Place, Hempstead, NY 11550,” the correct town in that zip code, provided subsequently. (Meyer affidavit, exhibit C at 2-3 n 1.) They do not point out that that address is on the border between Garden City and Hempstead, nor recognize that Meyer may have been unfamiliar with the precise boundary when he initially moved into his friend’s residence.
Second, respondents reject the new, permanent address Meyer provided: 54 Diamond Street, New York, New York 11222. Surely respondents do not seriously question that 54 Diamond Street in zip code 11222 is in Brooklyn. As Brooklyn is a borough within the city of New York, and the zip code locates the borough, the address provided is a common rendition of an address in any of the city’s boroughs.
Respondents then point to where petitioner separately has marked the box for Manhattan in the section containing Meyer’s home address: a likely oversight, readily curable, in a complicated, confusing application. These discrepancies reflect at most a businessman lacking attention to detail, not a criminal, dishonest, or immoral person. Insofar as they may amount to misrepresentation, it is both immaterial and unintentional, and the intended information is easily discerned.
3. Other business entities’ conduct: Respondents’ May 2007 decision relies throughout on acts and omissions by business entities other than petitioner. In fact, apart from petitioner’s unlicensed activity and Meyer’s residence discussed above, the decision contains little else that implicates petitioner directly, rather than simply through its omission of the information on the application. Respondents’ overwhelming reliance on conduct by other entities or individuals undermines the decision for several reasons.
Constitutionally, respondents might rely on actions or omissions by petitioner’s principal in connection with other busi *809 nesses, if a statute or regulation so permitted. (See Matter of Hollywood Carting Corp. v City of New York, 288 AD2d 71 [1st Dept 2001]; Tocci Bros, v Trade Waste Commn. of City of N.Y., 251 AD2d 160 [1st Dept 1998].) Administrative Code § 20-321 (b), however, refers only to the “good character” of the “person” to whom the license is to be granted, meaning “a natural person or an organization” (Administrative Code § 20-102 [e]), “a business entity, including ... a corporation” (Administrative Code § 20-102 [d]), here petitioner. No other statute nor any regulation indicates otherwise. Therefore respondents’ reliance on acts or omissions by entities other than petitioner exceeds the bounds of the very statute respondents invoke.
Even assuming the governing statutes permitted respondents’ reliance on conduct by other entities of which Meyer was a principal, he rebuts the premise that he was a principal. First, he denies any involvement, as an officer, a director, a shareholder, or a partner, in seven of the businesses respondents cite.
Second, the license application asks for information explaining other persons’ past or pending unlicensed activity, license denials, suspensions, or revocations, civil or criminal offenses by or charges against the person, or fines or judgments against the person, whether paid or outstanding. Like the governing statutes, “person” in the application refers to an individual or entity. (Verified answer, exhibit N, § 4.) The application asks for the above information, with explanations, regarding all persons listed in the application. They include petitioner; its officers, its shareholders with at least 10% ownership, any of the officers’ or shareholders’ relatives, and then each business for which petitioner, an officer, a shareholder, or any relative has been licensed or of which these persons were an officer, a director, a shareholder, or a partner. If the explanatory information reveals other individuals or entities, the application asks for all the above information regarding them. Consequently, insofar as Meyer or petitioner’s co-owner may have been involved with businesses in less than a principal capacity, the information sought likely may be unavailable to petitioner.
Third, the time frame for which the application seeks the above information is unlimited. If the unlicensed activity, license denials, suspensions, or revocations, or charges, offenses, fines, or judgments are not recent, the information is less likely available to petitioner, depending as well on the extent of the co-owners’ involvement with the particular individual or entity.
For example, insofar as Meyer concedes his involvement, not specifically as a principal, but as a shareholder or otherwise, *810 with the entities respondents list as owing a fine, he contends those entities are now out of business. Since the fines have been outstanding for periods ranging from over a year to over 16 years, respondents had their remedies for collection of these fines previously, including exacting personal guarantees from principals of the entities when they were operating licensed businesses. Depending on the judgment’s age and the extent of Meyer’s involvement with the judgment debtor, the same conclusion pertains to the judgments. Moreover, even if a judgment is recent, the record does not reveal the age of the underlying debts that may have been outstanding and collectible for several years before, when the businesses were operational.
The application’s format compounds the complexity of the never-ending inquiry outlined above. Section 4 of the application instructs at the beginning that if the applicant answers “YES” to any of the following questions, the applicant is to submit an explanation. (Id.) Each of the 10 following questions asks for an answer of “YES” or “NO.” (Id.) Four of these questions instruct, “If yes, provide” (id. § 4, 1Í1Í1, 4), or, “IF YES, include” (id. § 4, lili 5, 8), specific information, without clarifying whether these specific instructions supersede the introductory instruction. Respondents base their decision largely on petitioner’s omission of information beyond what these four questions specify.
One of these questions specifies “convictions.” (Id. § 4, 1Í 5.) The end of section 4 further instructs that “your license may be denied if you fail to disclose a conviction.” (Id. § 4.) A “conviction” refers to a criminal offense. Respondents base their decision on petitioner’s omission of civil violations by and civil fines against other entities and not on any criminal convictions, of which there are none against petitioner, Meyer, or petitioner’s co-owner or, to their knowledge, against any business to which they have been related. (See affidavit of Elizabeth Lang 1Í12.)
4. Conduct further rebutted by petitioner: Respondents claim Andrew Meyer is a principal of another entity, 4320 Broadway Parking LLC, against which they also invoked their remedy for unlicensed activity by imposing the requisite fine, which, they further claim, remained unpaid. (Administrative Code § 20-106 [b].) In this instance, although petitioner does not contest that Meyer is a principal of 4320 Broadway Parking LLC, he attests that the fine was in fact paid on May 14, 2007, over two weeks before respondents’ determination of May 31, 2007.
Respondents also rely on an outstanding judgment against Meyer personally. He attests that he is satisfying the judgment *811 pursuant to a payment agreement, which respondents do not claim is in default.
5. Inaccurate or omitted information in other entities’ applications: Again respondents rely on acts or omissions by other entities to which Meyer was connected, alluding to five unspecified license applications which Meyer signed on behalf of other entities and in which he listed his Social Security number, each time one or two digits differently from the other four applications. Since the Social Security numbers’ inclusion on the applications is optional, again these discrepancies reflect at most a businessman inattentive to detail, not a criminal, dishonest, or immoral person, and belie respondents’ characterization as “materially inaccurate.” (Meyer affidavit, exhibit C, at 2.) If respondents’ ground for denying petitioner a license is that petitioner is in fact too inattentive to detail to be fit for the parking garage business, their determinations have never so stated.
Respondents elsewhere allude to the nondisclosure of outstanding fines in license applications by other entities of which Meyer was a principal. Absent any specification of the entities, applications, or fines, it is impossible for petitioner to contest or for the court to validate respondents’ claim.
In sum, as a threshold error, respondents’ reliance on conduct by persons other than petitioner exceeds respondents’ statutory authority or any authority respondents themselves have conferred through regulations. In any event, were this fundamental error to be disregarded, respondents’ findings, even at face value, fail to establish any criminality, dishonesty, or immorality. Instead, they indicate failed businesses with outstanding debts for which neither petitioner nor its principals are liable. In many instances, petitioner also rebuts respondents’ findings, or they lack the specificity to permit rebuttal or the court’s assessment of their bearing on petitioner’s application. Various omissions or inaccuracies are immaterial, curable, and probable oversights. For the reasons explained, Meyer’s attestation that no further information sought by the application, insofar as its confusing format may be understood by a person of ordinary intelligence, is available to him through recollection, records, or personal contacts, beyond what he has presented, is credible. The record does not, as a whole, support intentional nondisclosure.
C. Applying Interpretive Standards
An agency may withhold a business or professional license based on criteria related to regulation of the business or profes *812 sion, such as “honesty and integrity,” when the license applicant has lied in the application or the agency’s investigation of the applicant and participated in illegal activity. (Matter of Hollywood Carting Corp. v City of New York, 288 AD2d 71 [2001]; Tocci Bros. v Trade Waste Commn. of City of N.Y., 251 AD2d 160 [1998]; Grasso Pub. Carting v Trade Waste Commn. of City of N.Y., 250 AD2d 454, 455 [1st Dept 1998]; see Dawson v Village of Spring Val., 151 Misc 2d at 132.) Furthermore, the agency arrives at those findings only after affording the applicant an adequate opportunity to be heard. (Hollywood Carting Corp. v City of New York, 288 AD2d at 72.) Respondents present no such findings or procedure, let alone a long record of illegal activity affecting public safety or health. (Id.; Grasso Pub. Carting v Trade Waste Commn. of City of N.Y., 250 AD2d at 458; Matter of Markman v New York State Dept. of Educ., 131 AD2d 908, 909 [3d Dept 1987]; see Dawson v Village of Spring Val., 151 Misc 2d at 134-135.)
Just as the facts respondents rely on in denying petitioner a license, especially when viewed in light of petitioner’s explanations, do not establish criminality or dishonesty, neither do those facts contravene the purposes behind Administrative Code § 20-321 (b) as expressed through sections 20-101 and 20-103. Petitioner’s conduct, particularly as distinct from other entities’ conduct, mainly indicates petitioner and Meyer are seeking to bring their business into compliance with respondents’ ever changing requirements. Thus, even if section 20-321 (b)’s “good character” condition is interpreted in light of sections 20-101 and 20-103, respondents’ findings bear no specific relation to section 20-101’s standards. (See Laureiro v New York City Dept. of Consumer Affairs, 41 AD3d at 719-720; Dawson v Village of Spring Val., 151 Misc 2d at 132.)
VI. The Absence of a Hearing
As set forth above, due process principles of vagueness and of irrationality and arbitrariness invalidate Administrative Code § 20-321 (b) regardless of what notice respondents gave petitioner regarding required or proscribed conduct that would merit or bar a license, or how they decided petitioner’s applications. Therefore the court need not decide petitioner’s claims that section 20-321 (b) fails to provide adequate means to contest respondents’ license denials. The absence of any administrative hearing, giving petitioner advance notice of conduct that barred a license or would merit one and an opportunity to establish petitioner’s qualifications or its applica *813 lions’ merits and rebut respondents’ disqualification of petitioner or rejection of its application, only compounds the constitutional infirmity.
Here, respondents gave petitioner a moving target. As discussed above, they notified petitioner of two conditions it was required to meet. It met them, but respondents still found the previously questioned address a ground for denial, even though that address was not in the application being considered, and then gave new grounds, even though they also were known to respondents when they set the previous conditions. {E.g. Lang affidavit 1i 12.)
Thus, assuming other, fundamental deficiencies in the license application scheme are remedied, providing a hearing before finally denying petitioner’s application still could save it from rejection. First, it must be assumed that importing Administrative Code § 20-101’s standards to section 20-321 (b) would cure its unconstitutional vagueness, irrationality, and arbitrariness. Further, it must be assumed that respondents’ findings do evince petitioner’s criminality, dishonesty, or other conduct contrary to section 20-101. Then, as petitioner’s explanations illustrate above, a hearing would give petitioner an opportunity to refute any such connection to those statutory standards. (Administrative Code §§ 20-101, 20-103; see V & A Towing v City of New York, 197 AD2d at 386; Laureiro v New York City Dept. of Consumer Affairs, 41 AD3d at 718.)
VII. Disposition
For all the above reasons, the court annuls respondents’ denial of petitioner’s application of April 11, 2007, and, insofar as respondents rely on their decision dated May 31, 2007, to supplant the earlier denial, the later decision as well. (CPLR 7803, 7806; Rocco v Kelly, 20 AD3d at 366-367; Matter of Rapoli v Village of Red Hook, 29 AD3d 1007, 1008 [2d Dept 2006]; Matter of Cornerstone Realty Group, LLC v County of Greene, 28 AD3d 1033, 1035 [3d Dept 2006]; Hill Park Health Care Ctr., Inc. v Novello, 12 AD3d at 1011; see Best Payphones, Inc. v Department of Info. Tech. & Telecom, of City of N.Y., 5 NY3d at 34-35; Essex County v Zagata, 91 NY2d at 453-454; Matter of Metropolitan Museum Historic Dist. Coalition v De Montebello, 20 AD3d 28, 35 [1st Dept 2005]; Matter of Pronti v Albany Law School of Union Univ., 301 AD2d 841, 842-843 [3d Dept 2003].) The court enjoins respondents from denying a parking garage license to petitioner for 283 East 164th Street, Bronx County, until Administrative Code § 20-321 (b) is amended, or respon *814 dents promulgate regulations remedying the unconstitutional vagueness and absence of objective standards in the statute. (CPLR 7806; Nicholas v Kahn, 47 NY2d at 34.)
Were the court itself to attempt to save Administrative Code § 20-321 (b) by construing it according to section 20-101, the breadth of section 20-101’s purposes would necessitate selecting, streamlining, and clarifying them in the context of the parking garage business, an endeavor that would usurp the functions of the New York City Council and DCA expertise. (People v Dietze, 75 NY2d 47, 52-53 [1989]; Dawson v Village of Spring Val., 151 Misc 2d at 135; see Raffellini v State Farm Mut. Auto. Ins. Co., 9 NY3d at 201; General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 258; Big Apple Food Vendors’ Assn, v Street Vendor Review Panel, 90 NY2d at 407-408; Consolidated Edison Co. of N.Y. v Department of Envtl. Conservation, 71 NY2d at 191.) Judicial construction also would create a situation where “the statutory language would signify one thing but, as a matter of judicial decision, would stand for something entirely different” and leave a predicament no better than the current situation: where “persons of ordinary intelligence reading section [20-321 (b)] could not know what it actually meant.” (People v Dietze, 75 NY2d at 53.)
To the extent set forth above, the court grants the declaratory and injunctive relief sought by the petition based on its second and fourth causes of action and, insofar as the claim is not moot, the third cause of action. In light of this disposition, the court need not reach the petition’s first cause of action for declaratory and injunctive relief based on a breach of contract and therefore dismisses that claim as academic. Since petitioner seeks damages based only on its fifth cause of action, for violation of constitutional equal protection guarantees, and has not supported that claim at this stage, and respondents have not moved to dismiss that claim, the court leaves its determination of that claim for a later stage of the proceeding. (See CPLR 410, 7804 [h]; 7806.) This decision constitutes the court’s order and judgment on the petition’s first through fourth causes of action. (CPLR 409 [b]; 7806.)