OPINION OF THE COURT
Jones, J.
Under a regulation which provides that where the proceeds of a sale have been ascertained to be uncollectible the vendor may exclude such receipts from his sales tax return, it is unreasonable for the State Tax Commission to require allocation of a partial payment on such a sale first to payment of the sales tax computed on the full purchase price.
In this proceeding brought under CPLR article 78 to annul a determination by the State Tax Commission assessing a deficiency in sales and use taxes due from petitioner for the period from August 1, 1965 through August 31, 1968 we draw the facts from a statement of agreed facts submitted to the commission by petitioner and the Sales Tax Bureau of the Department of Taxation and Finance.
During the period in question petitioner owned and operated six retail department stores in the State, one of which was in New York City. On December 18, 1970 after the Sales Tax Bureau had audited petitioner’s sales tax[1] returns for the *210 13 tax periods ending August 31, 1968, it issued a notice of determination and demand for payment of additional taxes alleged to be due, together with interest and penalties. Petitioner sought revision of the determination and on October 23, 1975 a settlement agreement was entered into resolving all but one substantive issue relating to the audit. That issue concerned petitioner’s deduction from sales on which tax liability was computed of bad debts, consisting of credit sales previously reported but which had subsequently proved to be uncollectible. The bureau auditors had added certain of these bad debts to taxable sales reported on petitioner’s returns.
In the years 1965 through 1968 petitioner made an average of approximately 12 million credit sales a year, offering three kinds of credit accounts to its customers. On one — the "regular charge account” — no down payment on purchases was required, no finance charges were assessed and the entire balance was due in 30 days after the billing date. The "permanent budget account” was a revolving credit account with payments spread over a number of months; no down payment was required but a minimum monthly payment and finance charges were assessed unless the full balance shown on the monthly bill was paid. The "convenient payment account” was an installment sale account for more substantial purchases with a down payment sometimes necessary, minimum monthly payments required, and finance charges imposed unless the balance on the monthly statement was paid in full. On none of the accounts did the monthly statement rendered to the credit customer set forth the price of goods purchased and the sales tax separately in stating the balance of the account.
In each form of account if payment was not received after a specified period of time or with a defined frequency, varying with the kind of account, the balance due on the account was written off as an uncollectible bad debt and was sent to an attorney for collection. Petitioner calculated its bad debt losses every three months from totals of uncollectible balances on individual accounts less any sums collected during the period from accounts previously written off. The figure thus arrived at was the bad debt deduction that it took in arriving at the total taxable sales reported on its sales tax returns. As a result of these computations petitioner effectively paid sales tax on a pro rata basis related to the amount actually received *211 on sales made on credit — the amount of tax it paid bore the same relation to the amount of tax due on the total purchase price that the amount of money collected bore to the total purchase price. Thus, if the purchase price of an item subject to a 5% tax was $100 but the store collected only $20 on the sale, it paid $1 in tax rather than the $5 that it would have paid had the full purchase price been collected.
The Sales Tax Bureau’s auditors did not employ this method of determining petitioner’s sales tax liability. Instead, they allocated any payments made by the customer first to the entire amount of the sales tax on the item purchased and any balance to the purchase price. In the illustration just cited, of the $20 payment received they allocated the first $5 to the sales tax and the remaining $15 to the purchase price of the item, so that no bad debt deduction was allowed for that sale and petitioner was subjected to liability for the full $5 sales tax. If the amount received by petitioner on a particular sale was less than the amount of the tax computed on the sales price his tax liability was limited to the amount of the payment received. A full bad debt deduction was allowed only in those instances in which no payment whatsoever had been received.
By applying the rules described to a random sample of petitioner’s accounts,[2] the auditors disallowed varying percentages of the bad debt deductions taken by it (depending on the kind of accounts being considered) and computed a sales tax deficiency, which was confirmed by the State Tax Commission. The commission however waived interest payments in excess of the minimum and also penalties, concluding that petitioner’s delay in making the payments demanded was excusable. In this connection it noted that, prior to institution of the State sales tax on August 1, 1965, petitioner had paid New York City sales tax on sales at its New York City store on a pro rata basis, that such payment had been allowed by the city under a regulation substantially similar to the State regulation in effect during the period in question, and that petitioner had had no written notification that the State would calculate State sales tax liability by applying payments *212 received first to the sales tax applicable to the total purchase price until January 6, 1969.
In this proceeding to review the Tax Commission’s rejection of petitioner’s challenge to the Sales Tax Bureau’s disallowance of bad debt deductions, the Appellate Division, to which the matter was transferred by order of Supreme Court, annulled the commission’s determination as irrational and unreasonable on the authority of Matter of Yonkers Plumbing & Heating Supply Corp. v Tully (62 AD2d 18, app dsmd 44 NY2d 949). We concur in that disposition.
At the time in question relevant provisions of the Tax Law imposed the sales tax on receipts from retail sales of tangible personal property (§ 1105, subd [a]) and defined "receipt” as "The amount of the sale price of any property * * * taxable under this article, valued in money, whether received in money or otherwise, including any amount for which credit is allowed by the vendor to the purchaser” (§ 1101, subd [b], par [3]). A subdivision[3] of section 1132 provided however: "The tax commission may provide, by regulation, for the exclusion from taxable receipts * * * of amounts representing sales where the contract of sale has been cancelled, the property returned or the receipt * * * has been ascertained to be uncollectible or, in case the tax has been paid upon such receipt * * * for refund of or credit for the tax so paid.” Pursuant to the authority thus vested in it, in November, 1965 the Tax Commission promulgated regulation 525.5 (a), which provided in part: "Where a contract of sale has been canceled, the property returned or the receipt * * * has been ascertained to be uncollectible, a vendor of tangible personal property * * * may exclude such receipts * * * from his return. Where the tax has been paid and reported in a return, a credit for the tax paid may be taken on any subsequent return filed by the vendor * * * or a claim for refund of the tax paid upon such receipt * * * may be filed”. (20 NYCRR 525.5 [a].)[4]
The interpretation placed on subdivisions (d) or (e) of section *213 1132 of the Tax Law and on regulation 525.5 (a) by the Sales Tax Bureau and by the State Tax Commission in this proceeding would all but emasculate the statute and regulation. The statute and the regulation obviously intend that a vendor shall be relieved of sales tax liability to the extent that the receipt from a sale proves uncollectible, so that the taxes which the vendor is required to remit will most closely reflect the. tax due on moneys actually received on sales of personal property. The method employed by the bureau and approved by the commission, by which it is assumed that the first cash received by a vendor on a credit sale is for the entire sales tax due on the sale, would have quite the contrary result and, by reason of the fact that the receipts under consideration are by their nature not fully collectible, would inevitably produce a liability for sales taxes which would deviate from the statutory sales tax rate. Thus, in the hypothetical instance previously referred to, if $5 of the single payment of $20 on the $100 sale be attributed first to the 5% tax applicable to the $100, the effective tax rate on the portion of the purchase price actually received will be 3310%. If instead of $20 the buyer is able to pay only $5, then a sales tax will be collected although no part of the purchase price of the sale is ever received by the vendor. If nothing is paid by the buyer, however, no sales tax is due on the transaction at all. In either of the latter two instances the vendor receives nothing in payment for the item sold, yet in the first instance the sales tax on the full amount of the sale is deemed to be due and owing from the vendor whereas in the second no sales tax is owed at all.
The pro rata method of sales tax liability computation employed by petitioner (and more recently by the Tax Commission itself)[5] — by which through deduction from taxable sales of uncollectible account balances the taxes remitted by the vendor reflect the sales tax imposed on payments actually received — conforms more nearly to the apparent intent of regulation 525.5 (a) as it implemented subdivisions (d) or (e) of section 1132 of the Tax Law. Indeed, even before the enactment of the statute and the promulgation of the regulation it had been the uniform practice of the City of New York, in administering its sales tax under a regulation virtually identi *214 cal to regulation 525.5 (a) (Reg Art 41, CCH New York Tax Reports, pars 163-214 [Transfer Binder]), to permit petitioner to pay tax on its receipts on a pro rata basis, deducting as bad debts a proportionate share of accounts on which full payment was not received. Enactment of the statutory provision and adoption of the Tax Commission’s regulation in face of that current practical application of the language there employed lends support to their interpretation in similar fashion (see Matter of Lockport Union-Sun & Journal v Preisch, 7 AD2d 502, 507-508, revd 8 NY2d 54). Further support may be found in the fact that not until more than three years after the promulgation of regulation 525.5 (a), during which time petitioner filed quarterly returns, did the Sales Tax Bureau inform it of the bureau’s method of calculating sales tax due on accounts written off as bad debts.
For all these reasons, we agree with the conclusion of the Appellate Division that the interpretation of regulation 525.5 (a) as applied to petitioner for the period in question is irrational and unreasonable. In reaching this determination we do not reject the view expressed by the dissenting Justice that it was within the discretion of the Tax Commission whether to provide for any credit or refund resulting from uncollectible credit transactions. Having elected to do so by the adoption of the regulation in question, however, it was not free to give that regulation an unreasonable interpretation.
Accordingly, the judgment of the Appellate Division should be affirmed, with costs.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur with Judge Jones.
Judgment affirmed.

. References to "sales tax” include both sales and use taxes.

. The Sales Tax Bureau agreed that the volume of petitioner’s charge accounts— which increased from approximately 750,000 to approximately 1,150,000 during the audit period — "would make it impracticably costly to make a separate bad debt calculation on each account based on a determination of the relation to the sales tax of the proportion of the sales price that was collected on each individual sale”.

. When section 1132 of the Tax Law was enacted by the adoption of section 1 of chapter 93 of the Laws of 1965 this provision appeared in subdivision (d) of section 1132. In 1966 it became a part of subdivision (e). (L 1966, ch 962.)

. Although the regulation, read literally, appears to contemplate a claim for refund or credit of the tax paid on a sale that proves to be uncollectible, no challenge has been made by the State Tax Bureau to petitioner’s procedure of deducting uncollectible receipts from taxable receipts on a subsequent return rather than claiming a credit for the tax previously paid on such receipts.

. Subsequent to the period here in question, on November 11, 1974 the State Tax Commission adopted the pro rata method of computation by promulgation of regulation 525.5 (c) (3), effective December 1, 1974 (20 NYCRR 525.5 [c] [3]).