(April 5, 2012)

■ In the Matter of PETER PRINCIPE, Respondent, v NEW YORK CITY DEPARTMENT OF EDUCATION, Appellant. [941 NYS2d 574]—

Order, Supreme Court, New York County (Alice Schlesinger, J.), entered May 19, 2010, which, to the extent appealed from as limited by the briefs, denied respondent New York City Department of Education's (the DOE) cross motion to deny the petition and dismiss the proceeding brought pursuant to, among other things, CPLR article 75, and granted the petition to the extent of vacating as excessive the penalty of termination of petitioner's employment as a New York City schoolteacher, and remanded the matter to the Hearing Officer for a lesser penalty, affirmed, without costs.

Petitioner Peter Principe was the dean of discipline of a middle school located in East New York, where many of the students belong to criminal gangs. This proceeding arose from two incidents that occurred between petitioner and several students in 2007.

The first incident occurred on April 20, 2007. The Hearing Officer found that petitioner placed MT, an 11-year-old student, in a headlock and swung him around. At the hearing, petitioner denied placing MT in a headlock or swinging him around. Rather, petitioner testified that, after he received several reports

of MT's misconduct from that morning and after breaking up two lunchroom fights involving MT, he took MT out of the lunchroom. Petitioner further testified that, as he was holding the lunchroom door open to allow other students to exit, he had his arm across the door to prevent MT from coming back into the lunchroom, but MT was pushing with his chest against petitioner's arm to get back into the lunchroom.

The second incident occurred on April 23, 2007. The Hearing Officer found that petitioner grabbed RP, a 13-year-old student, by the neck, threw him against a wall and requested RP and another student to retract their statements concerning the incident. At the hearing, petitioner testified that when he saw RP and another student in the hallway outside their homeroom teacher's classroom, he questioned them about their whereabouts that morning because he had learned from their homeroom teacher that they had run out of their homeroom class that morning, and petitioner had been unable to locate them in their morning classes. Petitioner further testified that, as he was questioning RP and the other student, they entered the homeroom teacher's classroom, and RP began shouting threats at his homeroom teacher. Petitioner testified that, as he and the two students were leaving the classroom, RP turned to reenter the classroom and shouted more threats at his homeroom teacher, so petitioner grabbed RP to escort him from the room. As they turned to leave the classroom the two lost their balance and fell into the wall. Petitioner denied asking the students to retract their statements.

As to both incidents, the Hearing Officer found that petitioner's testimony was not credible and that he committed misconduct by using corporal punishment. We agree with the motion court that the Hearing Officer had an apparent bias against petitioner when he discredited petitioner's entire testimony based, in part, upon respondent's mischaracterization of a portion of petitioner's testimony in addition to petitioner's testimony that he had once filed for bankruptcy. We also agree with the motion court that, by discrediting petitioner's entire testimony, the Hearing Officer failed to consider all the circumstances, including the disciplinary histories of the students involved, the context of the threatening environment in which the two incidents took place and that, at the time of the two incidents, petitioner was, as he testified, "only fulfilling [the] demands" of his position as dean of discipline. Moreover, the Hearing Officer appeared to give an inordinate amount of credit to a portion of a video recording, related to the second incident, that had been altered from its original format so that it ap-

peared frame by frame at one second intervals rather than its original format of a continuous video recorded in real time. The alteration to the videotape made what actually transpired during that incident unclear and equivocal. Although the motion court sustained the Hearing Officer's findings, petitioner did not cross appeal. That is understandable because petitioner otherwise received a favorable decision from the motion court.

The Hearing Officer also determined that termination was the appropriate penalty in this case. However, while we accept the Hearing Officer's findings against petitioner, we agree with the motion court that the evidence in this case demonstrates that petitioner's actions were not premeditated. Thus, given all of the circumstances, including petitioner's spotless record as a teacher for five years and his promotion to dean two years prior to the incidents at issue, we find the penalty excessive and shocking to our sense of fairness (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]; *cf. City School Dist. of the City of N.Y. v McGraham*, 75 AD3d 445 [2010], *affd* 17 NY3d 917 [2011] [penalty of 90-day suspension without pay and reassignment rather than termination reinstated in light of overall circumstances lending to the improbability of teacher engaging in similar inappropriate behavior in the future]).

Accordingly, we find that, in determining the penalty of termination, the Hearing Officer failed to consider all of the circumstances and relevant evidence, leading the Hearing Officer to view the incidents in isolation and divorcing them from the context in which they took place. Thus, we find the Hearing Officer's view of petitioner's credibility carried over, likely influencing his determination that petitioner should be terminated. Lesser sanctions are available that would deter petitioner from engaging in this conduct in the future (*see Matter of Riley v City of New York*, 2010 NY Slip Op 32540[U] [Sup Ct, NY County 2010], *affd* 84 AD3d 442 [2011]).

In this case, in view of the Hearing Officer's apparent unfair bias against petitioner, we believe that public policy considerations favor retention of a teacher who has a proven record of genuinely connecting with his students and making a positive impact in their lives (*McGraham*, 17 NY3d at 919 ["Courts will only intervene in the arbitration process in those 'cases in which public policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator' "], quoting *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 631

[1979]). There is no evidence in the record to suggest that petitioner was not well liked by the student body, and as the motion court emphasized, RP, one of the students involved in the second incident "made clear that he really liked [Principe] and that he felt that [Principe] understood him and was really kind of rooting for him and helping him with his difficulties."

The dissent, in reasoning that the penalty in this case was proportionate so that it did not shock one's sense of fairness, cites cases in which the teachers involved engaged in conduct wholly unrelated to their employment with the DOE (*Cipollaro v New York City Dept. of Educ.*, 83 AD3d 543 [2011]; *Matter of Rogers v Sherburne-Earlville Cent. School Dist.*, 17 AD3d 823 [2005]). Indeed, in both *Cipollaro* and *Rogers*, neither of the teachers involved held a position similar to that of petitioner, the dean of discipline, and in both cases the hearing officer's determination to terminate the teachers' employment was based on fraudulent conduct wholly unrelated to their employment with the DOE. In the case before us, as the court below explained, petitioner "was put in the position of Dean of the school because obviously there was confidence in his judgment and his ability to deal with difficult situations and difficult children, which was the situation in both of these incidents" and "he was doing what he was supposed to be doing, which was to maintain order."

Moreover, the dissent cites *Cipollaro* for the proposition that, when determining the appropriate penalty, a hearing officer may consider a teacher's lack of remorse. Undoubtedly, it is entirely reasonable for a hearing officer to implement the harsher penalty of termination following a finding of a teacher's lack of remorse for engaging in fraudulent conduct. However, while lack of remorse is one factor that a hearing officer may consider when determining the appropriate penalty, here as the motion court articulated, the Hearing Officer placed petitioner in a "very difficult situation," when he expected petitioner to show remorse, while petitioner, in exercising his responsibilities as dean of discipline, believed he was protecting members of his school's student body and faculty from two threatening situations.

Rather than considering the proportionality of petitioner's penalty, in light of "all the circumstances," as *Pell* requires, the dissent focuses on the incidents in the worst possible light by examining them in isolation from the context in which they occurred. Regarding the first incident, the dissent ignores the absence of evidence corroborating MT's testimony that petitioner placed him in a headlock. It also ignores that, in his role

as dean of discipline, petitioner believed that his actions protected students by preventing the escalation of fights between MT and two other students. Indeed, petitioner was aware of MT's significant history of misbehaving and regularly fighting with other students. Regarding the second incident, the dissent ignores that petitioner, again in his role as dean of discipline, was attempting to deal with recalcitrant students, both of whom had a history of violence, while he tried to protect a teacher whom he believed the students were threatening. Moreover, the dissent urges that the disciplinary histories of the students involved here are irrelevant. To the contrary, the disciplinary histories of MT and RP are relevant, because they are one factor among "all the circumstances" that *Pell* calls on us to consider when we are evaluating the proportionality of a penalty.

The dissent further attempts to justify the penalty of termination in this case by citing to a Court of Appeals case where the Court upheld termination for a single instance of corporal punishment and two cases where courts have upheld the same penalty for acts of corporal punishment (*Matter of Ebner v Board of Educ. of E. Williston Union Free School Dist. No. 2, N. Hempstead*, 42 NY2d 938 [1977] [teacher terminated for dragging a student by the hair from one class to another]; *Matter of Saunders v Rockland Bd. of Coop. Educ. Servs.*, 62 AD3d 1012 [2009] [teacher terminated for allowing a student to be strapped to a chair without cause and for striking a student in the chest and jaw]; *Matter of Giles v Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs.*, 199 AD2d 613 [1993] [teacher terminated for striking a student on the hands with a book and for throwing a car jack through a window]). However, nothing in those cases indicates that the teachers involved engaged in their sanctioned conduct in furtherance of their employment with the DOE. Those cases differ from the case before us in that petitioner here, while charged with the role of dean of discipline, engaged in conduct that he believed was appropriate to protect members of his school's student and faculty bodies.

Accordingly, we agree with the determination of the motion court that the penalty imposed here was excessive and "disproportionate to the offenses, in the light of all the circumstances" (*Pell*, 34 NY2d at 233) and that the matter be remanded to the Hearing Officer for a lesser penalty consistent with this court's decision. Concur—Gonzalez, P.J., Moskowitz and Acosta, JJ.

Friedman and Richter, JJ., dissent in a memorandum by Richter, J., as follows: I respectfully dissent because I do not believe that the penalty imposed here was so disproportionate

to the two offenses as to be shocking to one's sense of fairness. Nor do I believe that the penalty violates public policy.

Petitioner, a dean of discipline formerly employed by respondent New York City Department of Education, commenced this proceeding pursuant to Education Law § 3020-a (5) and CPLR 7511 seeking to vacate the opinion and award of an impartial hearing officer which found petitioner guilty of two separate incidents of corporal punishment, and ordered his termination. Supreme Court upheld the findings of guilt but concluded that the penalty of termination was excessive. Respondent now appeals, arguing that the court erred in vacating the penalty. Petitioner has not cross appealed to challenge the findings of guilt.

In the first incident, MT, an 11-year-old student, was exiting the school cafeteria after walking away from a verbal dispute he was having with a fellow student. As MT walked through the cafeteria doors, petitioner placed him in a headlock, swung him around, and told him to stop arguing. After petitioner let the child go, MT started crying because his "head hurt." MT walked up the stairs from the cafeteria and came upon a school safety officer. The safety officer noticed that MT was crying and asked him what was wrong. MT told the officer that petitioner had "choked him."

In the second incident, petitioner saw RP, a 13-year-old student, and another student in the school hallway. Petitioner and the two boys entered a teacher's adjacent classroom, and petitioner asked the teacher if the students were cutting class. When the teacher responded that they were, RP walked out of the classroom, stating that he was tired of being blamed for things he did not do. Petitioner followed RP out of the room, grabbed him by the shirt and slammed him into the wall. The back of RP's head hit the wall, and RP felt pain and dizziness. Petitioner continued to hold onto RP's shirt collar while walking him down the hallway and into petitioner's office. RP subsequently went to the nurse's office and got an ice pack for the "red lump" on the back of his head, which was several inches in diameter.

Sergeant Johnie Washington, a supervising school safety officer, observed the hallway incident involving RP in real time on a live video feed. He "couldn't believe" what he saw and immediately reported the matter to the school's principal. As the principal explained at the hearing, he viewed the video and saw no actions that would have justified petitioner's behavior. The video corroborated RP's account of the incident. RP prepared a written statement, reiterating his complaint that petitioner had

pushed him into the wall. Later that day, petitioner summoned RP to his office. At that meeting, petitioner asked RP to retract the statement he had made about the incident.

Petitioner testified in his own defense at the hearing. With respect to the first incident, petitioner denied putting MT in a headlock and swinging him around. As for the second incident, petitioner admitted grabbing RP's shoulder, but denied throwing him into the wall. Instead, petitioner explained that RP lost his balance, and the "momentum" caused him to "fall" into the wall.

The Hearing Officer determined that petitioner was not a credible witness because his testimony was internally inconsistent and was contradicted by the credible testimony of seven other witnesses as well as a video of one of the incidents. The Hearing Officer found that petitioner repeatedly fabricated testimony in an effort to deny or justify his physically abusive behavior. He further found that petitioner's unreasonable use of physical force against the two students, who were less than half his size, warranted the penalty of termination. Petitioner showed no remorse for his misconduct and, indeed, argued that his actions toward RP were proper and professional. For these reasons, the Hearing Officer concluded that petitioner would continue to engage in similar misconduct if returned to the classroom. As a result, the Hearing Officer found that petitioner was unfit to perform his duties and ordered his dismissal.

Where, as here, the parties are subject to compulsory arbitration, a determination made after a hearing held pursuant to Education Law § 3020-a must be in accord with due process, have adequate evidentiary support, and cannot be arbitrary, capricious or irrational (*City School Dist. of the City of N.Y. v McGraham*, 17 NY3d 917, 919 [2011]; *Lackow v Department of Educ. (or "Board") of City of N.Y.*, 51 AD3d 563, 567 [2008]). Moreover, a penalty will not be disturbed unless it "is so disproportionate to the offense, in the light of all the circumstances, as to be shocking to one's sense of fairness" (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 233 [1974]). In determining the appropriate penalty, a hearing officer may consider the teacher's lack of remorse and failure to take responsibility for his or her actions (*Cipollaro v New York City Dept. of Educ.*, 83 AD3d 543, 544 [2011]; *Matter of Rogers v Sherburne-Earlville Cent. School Dist.*, 17 AD3d 823, 825 [2005]). Moreover, although the teacher's prior disciplinary history may also be considered, even a long and previously unblemished record does not foreclose termination as an ap-

propriate sanction (*Cipollaro*, 83 AD3d at 544; *Matter of Rogers*, 17 AD3d at 824-825).

In an effort to minimize petitioner's guilt, the majority recites petitioner's version of the facts, which was rejected by the Hearing Officer. Not even petitioner chose to appeal these findings, which must be accepted as true for the purpose of determining the appropriate sanction. The arbitrator's decision to terminate petitioner was not arbitrary, capricious or irrational, nor does the penalty imposed shock one's sense of fairness. The Hearing Officer came to a reasoned conclusion that petitioner would continue to engage in similar behavior and that termination was the appropriate penalty. Petitioner, who served as the dean of discipline at the school, lost his temper on two separate occasions and unleashed his anger in violent acts involving two different students.

Moreover, as the Hearing Officer noted, petitioner showed no remorse whatsoever for his actions, and instead either denied or attempted to explain away his behavior. Making matters worse, in an attempt to interfere with an ongoing investigation, petitioner inappropriately asked one of the students to retract his complaint. Although acting as the dean of discipline at a city school may present its challenges, in light of the egregiousness of petitioner's repeated misconduct, the penalty of termination should not have been disturbed (*see Cipollaro*, 83 AD3d at 544).

The Court of Appeals has upheld the sanction of dismissal where a teacher's misconduct consisted of a single instance of corporal punishment. In *Matter of Ebner v Board of Educ. of E. Williston Union Free School Dist. No. 2, N. Hempstead* (42 NY2d 938 [1977]), the school board terminated a teacher who lost her self-control and dragged a student by the hair from one classroom to another, and the Court of Appeals found that "the punishment was not so disproportionate as to warrant judicial correction" (42 NY2d at 939). Other courts have similarly upheld termination of teachers for acts of corporal punishment (*see e.g. Matter of Saunders v Rockland Bd. of Coop. Educ. Servs.*, 62 AD3d 1012 [2009]; *Matter of Giles v Schuyler-Chemung-Tioga Bd. of Coop. Educ. Servs.*, 199 AD2d 613 [1993]).

Citing the Court of Appeals decision in *McGraham* (17 NY3d 917 [2011]), the majority argues that public policy considerations warrant a penalty less severe than termination. *McGraham*, however, actually supports upholding the Hearing Officer's decision here. In *McGraham*, the Court took a narrow view of the public policy exception and cautioned that "[c]ourts will only intervene in the arbitration process in those cases in which pub-

lic policy considerations, embodied in statute or decisional law, prohibit, in an absolute sense, particular matters being decided or certain relief being granted by an arbitrator" (*McGraham*, 17 NY3d at 919 [internal quotation marks omitted]). Thus, as the Court emphasized, "That reasonable minds might disagree over what the proper penalty should have been does not provide a basis for vacating the arbitral award or refashioning the penalty" (*id*. at 920).

Here, the majority suggests that the fact that petitioner has made a positive impact on students' lives is a valid public policy consideration that warrants reversing the penalty of termination. Although the teacher's positive record is one factor that the Hearing Officer could consider, it is not a public policy consideration that "prohibit[s], in an absolute sense" (*id*. at 919) the Hearing Officer's decision to terminate petitioner for his acts of violence against the two students.

This Court's decision in *Matter of Riley v City of New York* (84 AD3d 442 [2011]), relied upon by the majority, is distinguishable. In *Riley*, we concluded that a penalty of termination was disproportionate for a teacher who, in an isolated incident, slapped a student across the face (*see Matter of Riley v City of New York*, 2010 NY Slip Op 32540[U] [2010], *affd* 84 AD3d 442 [2011]). Here in contrast, petitioner was found guilty of two separate acts of corporal punishment committed against two different students. Furthermore, in *Riley*, we focused on the fact that the student involved sustained no physical or emotional injury as a result of the incident. Both of the students here testified about the physical effects of petitioner's misconduct. RP described feeling pain and dizziness after petitioner slammed him into the wall. As a result, RP had a several-inch-wide "red lump" on his head requiring treatment by the school nurse. And, as MT described, his "head hurt," causing him to cry, after petitioner grabbed him in a headlock. Finally, unlike the teacher in *Riley*, petitioner attempted to influence the investigation by asking RP to withdraw his complaint.

The majority unfairly and incorrectly argues that the Hearing Officer failed to consider the context in which the two incidents took place and the disciplinary history of the students involved. The Hearing Officer's opinion explicitly states that in reaching his conclusions, he "fully considered" "[t]he testimony of all witnesses," "the evidence adduced" at the hearing, and the "positions and arguments advanced by [petitioner] during the hearing and in . . . closing arguments." In any event, the disciplinary history of the students is irrelevant here, especially since there was no finding by the Hearing Officer that petitioner

was acting in self-defense or was otherwise justified in using physical force. It is inappropriate to suggest that petitioner should have been given more latitude in his use of force, or that he should be penalized less severely, merely because the students involved had past disciplinary problems. It certainly does not shock one's sense of fairness that the Hearing Officer concluded that petitioner's use of corporal punishment was wrong and should be severely punished, regardless of the background of the victims.

The majority argues that a lesser penalty is appropriate because petitioner believed that he was protecting other students and faculty members from threatening situations. This, however, was not petitioner's defense at the hearing. As to the first incident with MT, petitioner flat out denied that it ever happened. And in the second incident, petitioner offered the absurd explanation that RP lost his balance and the "momentum" caused him to "fall" into the wall. Petitioner's claim that the two boys had falsely accused him was soundly rejected by the Hearing Officer and is not the subject of this appeal.

I am troubled by the majority's belief that petitioner's punishment should be reduced because he was acting "in furtherance of" his role as dean of discipline. In fact, just the opposite is true. Petitioner's acts of violence against the two students were in blatant derogation of his duties as chief disciplinarian. The majority implies that because petitioner was dean of discipline, he should be treated less severely than a teacher in a classroom. This analysis turns logic on its head. As the dean of discipline, petitioner should be able to control verbal disruptions by students without resorting to excessive force.