OPINION OF THE COURT
Lucy Billings, J.
In this proceeding pursuant to CPLR article 75, petitioner *982 Nicole Moreno-Lieberman moves to vacate an arbitration award dated February 16, 2011, insofar as it (1) found her culpable of one of four specifications charged against her and (2) imposed a $7,000 fine. The sustained fourth specification charged that
“[o]n or about May 24, 2010, Respondent [petitioner here] did impede an official Department investigation, in that Respondent turned over evidence relevant to Specifications 1, 2 or 3 . . .to the father of Student A, to wit, a written statement wherein Student A indicated he may hurt or kill himself, resulting in the Department’s investigator being unable to obtain said writing.” (Verified petition, exhibit A at 3.)
Petitioner is a tenured teacher employed for more than nine years by respondent New York City Department of Education. She was assigned to Public School (PS.) 169 within Community School District 75 as a teacher and as the dean of discipline. The specifications against her stemmed from her role in handling a school pupil’s threats of suicide. School officials instituted separate specifications against the school’s guidance counselor.
I. The Administrative Proceedings
The mandatory arbitration proceeding for petitioner, a tenured teacher, was held before a hearing officer pursuant to Education Law § 3020-a (see City School Dist. of the City of N.Y. v McGraham, 17 NY3d 917, 918 [2011]), as supplemented by the collective bargaining agreement between respondent Department of Education and petitioner’s union, the United Federation of Teachers. The Hearing Officer dismissed three specifications, which charged petitioner with failing to take steps required by the Department’s regulations to protect a student, referred to as “Student A,” and prevent him from harming himself. (NY City Dept of Educ, Chancellor’s Regulation A-755.) Dismissed specification I charged that, upon learning of student A’s suicide threat, petitioner failed to notify the principal, allowed student A to be released from school without notifying his father of the suicide threat, and did not telephone 911 for help for student A. Dismissed specification II charged that, based on her conduct set forth in specification I, petitioner endangered the physical, mental, and moral welfare of student A, a child. Dismissed specification III charged that, based on her conduct set forth in specifications I and II, petitioner failed to prevent or contributed to student A’s suicide attempt and hospitalization.
*983 In sustaining the fourth specification against petitioner, the Hearing Officer concluded as follows. First, petitioner, albeit unintentionally, negligently allowed a student’s handwritten suicide note, written on a napkin and referred to as the “napkin note,” to be taken from the school by the student’s father without preserving a copy of the note. Further, her “serious negligence . . . impeded the investigation” by respondent Department of Education into school personnel’s handling of the student’s threat to harm himself. (Verified petition, exhibit A at 41.) The Hearing Officer explained that he was imposing a “serious” fine of $7,000 to “sufficiently impress upon Respondent [petitioner here] the importance of preserving records no matter what position she holds.” (Id. at 44.)
Petitioner claims that the Hearing Officer’s decision sustaining the single specification against her is arbitrary and unsupported by the record and that, in any event, the $7,000 fine is so disproportionate to the circumstances of the offense as to shock any sense of fairness. (CPLR 7511 [b] [1].) Respondents move to dismiss the petition on the ground that it fails to state a claim that the Hearing Officer’s decision is arbitrary, is unsupported by substantial evidence, or imposes a penalty disproportionate to the offense sustained. (CPLR 404 [a]; 3211 [a] [7]; 7511 [b] [1].) Applying the standard of review as most recently articulated by the Court of Appeals in City School Dist. of the City of N.Y. v McGraham (17 NY3d at 919-920), and by the First Department in Matter of Principe v New York City Dept. of Educ. (94 AD3d 431, 432-433 [1st Dept 2012]), the finding regarding the fourth specification is supported by the evidence and rational, but the fine imposed without any guiding standard is excessive and shocking to a sense of fairness.
II. Summary of the Factual Record
The events at issue took place at PS. 169 Friday, May 21, 2010, and Monday, May 24, 2010, and began with interactions among teenage pupils, a male pupil referred to as student A and two female pupils referred to as students B and C. Student B was student A’s former girlfriend. Student B had complained to Efraim Gabriel, a school aide, that student A had tried to kiss her and touch her breast. On May 21, 2010, Gabriel relayed the complaint to petitioner as a disciplinary matter, and petitioner telephoned student A’s father in Pennsylvania and asked him to meet with her at the school on Monday, May 24, 2010, to discuss the initial complaint about his son.
Upon learning of student B’s complaint on May 21, 2010, student A wrote a note on a paper napkin in Spanish, which he *984 asked student C to give to student B. The note, referred to as the “napkin note,” demanded that student B stop lying about him, in effect that she withdraw her complaint, and declared that he would rather kill himself and die than be jailed or deported to the Dominican Republic as a result of her complaint. Student B gave the note to the school aide Gabriel, who brought it to petitioner, helped her to translate it into English, and left it with her.
Petitioner escorted student A to the school’s trained Spanish speaking guidance counselor, Ms. Vartanova, and showed her the “napkin note.” The Hearing Officer found that petitioner’s steps up to this point to inform and involve the school guidance counselor were consistent with the Department of Education’s required procedures. (Chancellor’s Regulation A-755.)
After discussing with student A the note he had written, guidance counselor Vartanova persuaded student A to write a second note retracting any intention to hurt himself. Vartanova advised petitioner that, in the guidance counselor’s opinion, student A’s condition allowed his release from school to his home at the end of the school day. Petitioner agreed with Vartanova’s conclusion and, acting on her advice, allowed student A to leave school at the end of the school day Friday, May 21, 2010. The original “napkin note” remained in petitioner’s possession.
On Monday morning, May 24, 2010, Raphael Ortega, student A’s father, along with student A’s grandfather arrived at the school to keep the appointment with petitioner. The father and grandfather were escorted to her office by school aide Gabriel, who informed petitioner that student A in fact had attempted suicide May 21, 2010, and was hospitalized. During petitioner’s conversation with Ortega, petitioner handed him the “napkin note” to read. Guidance counselor Vartanova then joined petitioner and Ortega. Distressed by the news of student A’s suicide attempt, petitioner and Vartanova discussed visiting student A at the hospital. Such a visit required prior consultation with the school principal, Ryan Scallon, so both petitioner and Vartanova exited petitioner’s office to confer with him, leaving student A’s father and grandfather in her office. When petitioner returned, student A’s father was preparing to leave and left along with the grandfather.
Later, when looking for the “napkin note” on her desk to show to principal Scallon, petitioner discovered that the note was missing. WTien she telephoned student A’s father, he admitted he had taken the “napkin note” with him. He promised to return it, but never did.
*985 III. Conclusions Supported by the Record
A review of the testimony by petitioner, the Department of Education investigator Derrick Dottin, the school principal Scallon, and student A’s father shows that, when petitioner handed the “napkin note” to the father, she did not intend that he keep it. Her distress upon learning of student A’s suicide attempt, however, overcame her customary professional discipline so that she neither sought to retrieve the note from the father before he left, nor arranged to copy it. This record supports the Hearing Officer’s decision insofar as he found that petitioner was negligent in failing to satisfy her responsibility to preserve school records.
Despite a careful, conscientious opinion, the Hearing Officer nevertheless overstated the importance of the missing “napkin note” to respondents’ official investigation of the circumstances surrounding the charges against petitioner. The investigation focused on the possible further steps to have been taken by school personnel to prevent student A’s suicide attempt. Among the school employees, students, and family who read the note, including petitioner, school aide Gabriel, guidance counselor Vartanova, student A, his father, and student B, there was no disagreement about the note’s contents. No evidence suggests that the note’s exact wording or appearance was of any consequence to the investigation.
As painstaking as the Hearing Officer’s recitation of other factual details may be, his decision fails to consider these critical circumstances. The Hearing Officer never explains why documentation of the note’s undisputed contents was “central” to the investigation’s conclusions — because, when the “missing record” is considered in the context of the consistent evidence set forth above, how the note’s physical absence hindered the Department of Education, in its investigation or otherwise, is inexplicable. (Verified petition, exhibit A at 44; see Principe v New York City Dept. of Educ., 94 AD3d at 432-433.) The Hearing Officer admittedly never explains how physical possession of the napkin would have changed the investigation’s direction or conclusions, but simply declares that he “will not speculate on exactly how the investigation might have turned out differently had the ‘napkin note’ been available.” (Verified petition, exhibit A at 42-43.)
Yet the Hearing Officer justified the amount of the $7,000 fine he assessed against petitioner on the significance of the missing “napkin note” in somehow obstructing respondents’ *986 investigation of the charges to “teach her a lesson” about the importance of preserving Department of Education records. Petitioner already was punished by losing her position as the dean of discipline. The $7,000 fine, arrived at without reference to any specific criteria whatsoever for the imposition of fines, is excessive to the point of shocking the conscience. (Principe v New York City Dept. of Educ., 94 AD3d at 433; Matter of Duryea v New York City Hous. Auth., 85 AD3d 653, 654 [1st Dept 2011]; Wong v McGrath-McKechnie, 271 AD2d 321, 321-322 [1st Dept 2000]; see Matter of Featherstone v Franco, 95 NY2d 550, 554 [2000].)
IV The Invitation to Arbitrary Assessment of Penalties
In fact, the absence of any specific guidelines for the imposition of fines in teachers’ disciplinary proceedings shocks the conscience and is a deficiency to be addressed by respondents or a legislative body. While respondents and their designated hearing officers unquestionably are authorized to impose fines on teachers for disciplinary offenses, the decision makers must do so fairly, not arbitrarily. (Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 254 [2004]; Matter of Abraham & Straus v Tully, 47 NY2d 207, 213-214 [1979]; 164th Bronx Parking, LLC v City of New York, 20 Misc 3d 796, 804 [Sup Ct, Bronx County 2008].) Neither the Education Law, nor the Chancellor’s Regulations, nor any other code fixes any “primary standard” or articulates any objective test or gauge (General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d at 254; Matter of Nicholas v Kahn, 47 NY2d 24, 31 [1979]; 164th Bronx Parking, LLC v City of New York, 20 Misc 3d at 805) to guide respondents’ or hearing officers’ exercise of authority and discretion in their assessment of monetary penalties. (Matter of Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d 402, 407-408 [1997]; Nicholas v Kahn, 47 NY2d at 28, 33-34; 164th Bronx Parking, LLC v City of New York, 20 Misc 3d at 805; see Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d at 405-406.) Their assessment of penalties that they are charged to administer may be upheld if the assessment is rational and not excessive (e.g. Goodwin v Perales, 88 NY2d 383, 392 [1996]), yet no statute or interpretive regulation articulates a standard or gradation against which to measure the rationality or excessiveness of a monetary penalty. (Nicholas v Kahn, 47 NY2d at 33-34; Matter of Levine v Whalen, 39 NY2d 510, 518-519 [1976]; 164th Bronx Parking, LLC v City of New York, 20 Misc 3d at 805-806.)
*987 In sum, the absence of any statute or implementing regulation to guide the evaluation of fines to be imposed allows unfettered, standardless, arbitrary administrative decision making. (164th Bronx Parking, LLC v City of New York, 20 Misc 3d at 806.) By delegating unbounded latitude to respondents and hearing officers in these administrative actions, the statutory and regulatory scheme leaves their decisions subject to untrammeled discretion. (Big Apple Food Vendors’ Assn. v Street Vendor Review Panel, 90 NY2d at 408; Nicholas v Kahn, 47 NY2d at 28, 33-34; 164th Bronx Parking, LLC v City of New York, 20 Misc 3d at 806; Matter of Dawson v Village of Spring Val., 151 Misc 2d 128, 134 [Sup Ct, Rockland County 1991]; see CPLR 7803 [3].)
V Disposition
Consequently, the court grants respondents’ motion to dismiss the petition insofar as it seeks to vacate the Hearing Officer’s decision sustaining the fourth specification, but denies respondents’ motion and grants the petition insofar as it seeks to vacate the fine imposed. (CPLR 404 [a]; 409 [b]; 3211 [a] [7]; see 7803 [3], [4].) The offense found by the Hearing Officer approximates the misdemeanor obstructing governmental administration, for which a maximum $1,000 fine is authorized, yet the offense here does not even meet all of the misdemeanor’s elements, in particular intent. (Penal Law §§ 80.05 [1]; 195.05.) Therefore, unless the parties agree on a fine of $1,000 or another amount, the court remands the issue of the penalty to respondents for the Hearing Officer’s further hearing, consideration, and determination. (Principe v New York City Dept. of Educ., 94 AD3d at 435.)
Because the court does not disturb respondents’ determination regarding petitioner’s offense, and no party indicates any incompleteness in the administrative record already presented to support the petition and the motion, the court perceives no purpose in proceeding further in this forum with an answer to the petition. (See CPLR 404 [a]; 409 [b]; 410, 7511 [b] [1]; [d], [e]; Matter of Nassau BOCES Cent. Council of Teachers v Board of Coop. Educ. Servs. of Nassau County, 63 NY2d 100, 102-103 [1984]; Matter of Camacho v Kelly, 57 AD3d 297, 299 [1st Dept 2008].) If any party seeks to show such a purpose, that party may move, by an order to show cause, to restore this proceeding. Absent restoration, this decision constitutes the court’s order and judgment granting the petition to the extent set forth and otherwise dismissing this proceeding. (CPLR 409 [b]; 410.)